Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
T: 212.626.4100
F: 212.310.1600



*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| National Tobacco Company, LP<br><br>Plaintiff,<br><br>-against-<br><br>Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving, p.k.a., Lifesavas,<br><br>Defendants. | Case No.   08 CV 03383 (SAS)<br><br><br>**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF SOUGHT** |

Plaintiff National Tobacco Company LP ("NTC") by its attorneys Baker &

McKenzie LLP, for its complaint against defendants Timothy Parker and Xavier Mosley,

p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley and Solomon David and Marlon

Irving, p.k.a. Lifesavas ("Defendants") alleges as follows:

**PARTIES**

1.      Plaintiff NTC now is, and at all times relevant to the complaint has been, a

Delaware limited partnership with a principal place of business in Louisville, Kentucky.

2.      Upon information and belief, Defendant Blackalicious is a musical group

whose members Timothy Parker and Xavier Mosley are domiciled in California, and who

have also performed with or as part of the band Galactic.

3.     Upon information and belief, Defendant Raymond Riley p.k.a. Boots Riley is domiciled in California named Raymond Riley, who performs musically both on his own, as a part of the band The Coup and with or as part of the band Galactic.

4.     Upon information and belief, Defendant Lifesavas is a musical group whose members Solomon David and Marlon Irving are domiciled in Portland, Oregon, and who have also performed with or as part of the band Galactic.

## JURISDICTION AND VENUE

5.     This court has subject matter jurisdiction under the United States Lanham Act, 15 U.S.C. § 1051 *et seq.,* for a declaratory judgment of non-infringement.  The jurisdiction of this Court is founded also on 28 U.S.C. §§ 1331, 1338(a), 2201(a) and 2202 for causes of action arising under the Lanham Act and the Declaratory Judgment Act.  Jurisdiction is founded on 28 U.S.C. §§ 1332 and 1367 for other causes of action.

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

7.     This court has personal jurisdiction over the Defendants, who have performed in concerts numerous times at theatres and venues, sold goods and services, and participated in concert tours in this judicial district.  A showbill for Defendants' November 17, 2007 concert in New York, New York is attached as Exhibit 1.  Each of the Defendants have also advertised and offered goods and services on an interactive retail website that can be reached from New York.

8.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c)

2

because Defendants are subject to personal jurisdiction here, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

9.      Venue is further proper in this District pursuant to a forum selection clause in an Artist Sponsorship Agreement (the "Agreement," attached as Exhibit 2) between Plaintiff and Galactic Funk Touring, Inc., pursuant to which the Defendants appeared in concert as part of the ZigZagLive concert tour.

10.     An actual case or controversy has arisen between the parties.

11.     Defendants have threatened litigation against Plaintiff and assert that Plaintiff's truthful and accurate use of Defendants' names and likenesses constitutes trademark infringement and violates Defendants' statutory and common law rights of publicity.

12.     Defendants further have threatened to tarnish and disparage Plaintiff's business reputation and goodwill by spreading injurious falsehoods regarding Plaintiff's business practices and fair and proper use of news and public domain information to other artists and bands with whom Plaintiff has business and/or contractual relationships.

13.     These statements threaten irreparable harm to Plaintiff's reputation, goodwill and business in an amount that is incalculable.

## FACTUAL ALLEGATIONS

14.     Plaintiff NTC, through a license of its indirect parent company, is the exclusive distributor in the United States (and Canada) for the Zig-Zag® cigarette paper products.

15.     The Zig-Zag® cigarette paper products are over a century old and have, over time, developed tremendous secondary meaning and customer goodwill.

16.    NTC and its predecessor in interest have spent hundreds of thousands of dollars in the United States promoting the Zig-Zag® brand which has come to signify quality products emanating from a reliable source.

17.    Zig-Zag Live Club Tour 2007 promotes a concert tour ("ZigZagLive") throughout the United States and here in New York City in which various bands perform at multiple venues with Plaintiff's sponsorship.

18.    There is a website related to Zig-Zag Live Club Tour 2007 at the URL www.zigzaglive.com on which viewers may learn about various musical guests in the ZigZagLive tour and the concert schedule.

19.    On or about October 9, 2007, Plaintiff, through the Zig-Zag Live Club Tour 2007, entered into an Agreement with a business entity Galactic Funk Touring, Inc., which granted Plaintiff the right to sponsor certain concerts on November 2, 6, 17 and 18, 2007, featuring the Galactic Funk Touring group.  (Ex. 2.)

20.    The Galactic Funk Touring group signed the Agreement by its representative who appeared to have control and give consent on behalf of Defendants as a part of the Galactic Funk Touring group.

21.    Plaintiff reasonably relied on Galactic Funk Touring group's agent in entering into the Agreement and at all times Plaintiff justifiably relied on the agent's representations.

22.    Plaintiff understood Galactic Funk Touring group to be the artists who performed as and with the band Galactic on the ZigZagLive concert tour in 2007.

23.    The Agreement allowed Plaintiff to market and advertise these concerts on television, radio, print, and internet, as well as on displays at concert venues, with

4

approval by Galactic Funk Touring's representative, and to publish biographies and photographs of the performing artists in such advertising. (Ex. 2, at ¶ 2.)

24.    The Agreement provided that the rights and obligations of the parties to the Agreement would be governed by the law of the state of New York, and that any action arising from or related to any provision of the Agreement shall be determined to be under the jurisdiction of the courts of the State of New York in New York county, and the courts of the United States of America in the Southern District of New York. (Ex. 2, at ¶ 9.)

25.    The Agreement is between two parties domiciled in New York City. (Ex. 2.)

26.    Plaintiff used artwork and band names from press releases obtained from Galactic Funk Touring's website, at http://www.galacticfunk.com/presskit, to design the marketing and advertising materials.

27.    Defendants' names are listed as artists performing with Galactic Funk Touring multiple times on Galactic Funk Touring's website, as shown in screen captures from that website, attached as Exhibit 3 to this Complaint.

28.    Galactic Funk Touring's representative gave approval and consent for artwork and showbills for the 2007 ZigZagLive tour both orally and in writing to Plaintiff.

29.    Plaintiff reasonably relied on Galactic Funk Touring's agent and the apparent authority he had to approve and authorize use of Defendants' names and likenesses. (*See* Ex. 2, Ex. 3.)

30.    Using the artists' names, including those of Defendants, and artwork provided by and approved by Galactic Funk Touring's representative, Plaintiff truthfully advertised the four concerts for which it had contracted with Galactic Funk Touring in

various media, including the ZigZagLive website.

31.    Defendants willingly appeared on stage with, and performed as a part of, Galactic Funk Touring during the ZigZagLive Tour 2007.

32.    Defendants Boots Riley and Lifesavas appeared as vocalists on stage with Galactic Funk Touring on all four dates set forth in the Agreement.

33.    Defendant Blackalicious appeared as a special guest artist on the tour.

34.    At no time was Plaintiff ever given reason to belief that Defendants were appearing on the ZigZagLive tour in any capacity other than as Galactic Funk Touring.

35.    Upon information and belief, on the dates of the concerts covered by the Agreement, all concert venues included prominent signs, banners and other advertising, including a promotional exhibition table and in-person representatives, listing ZigZagLive as the sponsor of the concert.  (See Ex. ¶ 2.)

36.    Upon information and belief, Defendants knew that they were performing in conjunction with the ZigZagLive Tour 2007, and that it was sponsored by Plaintiff.

37.    Upon information and belief, Defendant Boots Riley repeatedly requested a "ZigZagLive Tour 2007" guitar from Plaintiff's tour managers and agents.

38.    Defendants never complained to Plaintiff about Plaintiff's endorsement of the ZigZag Live Tour 2007 while performing with and as a part of Galactic Funk Touring.

39.    Defendants never complained about the showbills, the Zig-Zag banners or the other promotional materials at the venues and stages on which they performed.

40.    Months after participating in Plaintiff's concert tour, on March 28, 2008, Defendants wrote to Plaintiff through counsel asserting that Defendants would not have knowingly been associated with Plaintiff's business, and that Plaintiff's posting materials

6

relating to Defendants on the ZigZagLive website infringes Defendants' rights under, *inter alia*, 15 U.S.C. § 1125(a)(1)(A), California Civil Code § 3334 and Oregon common law, and demanded that Plaintiff cease and desist from posting information about Defendants participation on the 2007 tour on the ZigZagLive website, among other things.

41.    In the March 28, 2008 letter, Defendants' counsel stated Defendants' intention, if Plaintiff did not pay hundreds of thousands of dollars to Defendants by April 4, 2008, to publish injurious false statements *i.e.,* to make public statements "decrying" the relationship of Defendants to Plaintiff and about Plaintiff and Plaintiff's business practices related to the ZigZagLive Tour.

42.    On April 4, 2008 Plaintiff wrote to Defendants through counsel rejecting Defendants' demands.

43.    As a show of good faith, and without waiving any of its rights, Plaintiff removed all references to Defendants from its website, despite being justified in the use of such materials.

44.    Plaintiff explained in the April 4, 2008 letter that, among other reasons, because Defendants each willingly participated in the ZigZagLive 2007 concert tour, they had no basis to complain about the accurate and factually correct representations on Plaintiff's website.

45.    Counsel for the parties corresponded after the exchange of the above correspondence and were unable to resolve the matter.

46.    On April 7, 2008, upon receiving notice that Plaintiff initiated this declaratory judgment action against Defendants, Defendants' counsel responded to Plaintiff's

counsel: "Did it occur to you and your client that now, instead of facing claims by 3 groups, your client will now likely be facing claims by 30-40 groups. My clients have contacts with nearly every artist that appeared on the site." (Email from Anthony McNamer to Marcella Ballard, April 7, 2008, attached as Exhibit 4 to this Complaint).

47.    Upon information and belief, Defendants have untruthfully stated to "thirty to forty" other artists and bands, with whom Plaintiff has business and contractual relationships, that Plaintiff has illegally and improperly conducted its business and that Plaintiff has infringed upon rights belonging to those bands and Defendants.

48.    Upon information and belief, Defendants have encouraged these thirty to forty other artists and bands to bring similar unwarranted suits against Plaintiff.

49.    Upon information and belief, Plaintiff has experienced injury to its business reputation and business and contractual relationships with the above mentioned artists and bands.

50.    By reason of Defendants' claims of infringement, and Defendants' injurious falsehoods a real and justiciable controversy exists concerning Plaintiff's rights with respect to their factual and accurate reporting on the ZigZagLive website concerning Defendants and uncertainty will continue to exist unless the issue between Plaintiff and Defendants is resolved.

51.    Plaintiff cannot quantify the damage to its reputation, business, goodwill, and the ZigZagLive tour as a result of Defendants' acts, and will suffer irreparable harm in the absence of injunctive relief.

## PLAINTIFF'S FIRST CAUSE OF ACTION:
## DECLARATORY JUDGMENT

52.    Plaintiff incorporates by reference all of the allegations in the preceding paragraphs.

53.    This action is brought under the provisions of 28 U.S.C. § 2201 for the purpose of determining a question in actual controversy between Plaintiff and Defendants.

54.    In light of Defendants' claims of infringement of their alleged trademarks, rights of publicity and other common law rights, Plaintiff has a reasonable belief and imminent fear that Defendants will raise issues relating to alleged trademark infringement under 15 U.S.C. § 1125(a), California Civil Code § 3334 and Oregon common law.

55.    Plaintiff denies any and all claims of liability for such alleged violations of Defendants' rights.

56.    Plaintiff has not engaged in any acts either with knowledge that such acts infringe Defendants' rights or with the intent to cause confusion or mistake, or to deceive the consuming public.

57.    There is no false representation or likelihood of confusion where Defendants have each participated in the ZigZagLive concert tour.

58.    There is a substantial and justiciable controversy between Plaintiff and Defendants as to whether Plaintiff's posting on the ZigZagLive website relating to Defendants infringes Defendants' rights under the Lanham Act, 15 U.S.C. §1125(a)(1)(A), California Civil Code § 3334 or Oregon common law, and as to whether Defendants have any legitimate right to continue to threaten to make injurious public statements, interfere with Plaintiff's contractual relations or maintain an action for

9

alleged infringement under the Lanham Act or any other statute or common law against Plaintiff.

59.    Absent injunctive relief, Plaintiff has no means by which to continue to truthfully and accurately advertise their ZigZagLive touring services. Plaintiff has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Plaintiff for the harms to its reputation and goodwill through the threat of litigation, the making of false public statement, the interference with Plaintiff's contractual relations and for Plaintiff's inability to continue to run its businesses without interference.

60.    By reason of the foregoing, Plaintiff is entitled to an injunction enjoining Defendants and all those acting in concert with them, from continuing to make these or any further misrepresentations.

## PLAINTIFF'S SECOND CAUSE OF ACTION:
## DEFAMATION

61.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

62.    Upon information and belief, Defendants have negligently and maliciously made false statements regarding Plaintiff's business practices, without Plaintiff's authorization, to third parties which have caused Plaintiff irreparable harm, injuries and damages.

63.    Absent injunctive relief, Plaintiff has no means by which to protect its business reputation and goodwill. Plaintiff has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Plaintiff for the harm to its business reputation and goodwill.

64.    By reason of the foregoing, Plaintiff is entitled to an injunction enjoining

10

Defendants and all those acting in concert with them, from continuing to make these or any further misrepresentations.

65.     Plaintiff is also entitled to damages in an amount not yet determined.

## PLAINTIFF'S THIRD CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH CONTRACT

66.     Plaintiff incorporates by reference the allegations in the preceding paragraphs of this complaint.

67.     Plaintiff has entered into lawful and valid contracts with various artists and bands in conjunction with its ZigZagLive Tour.

68.     Defendants knew of Plaintiff's lawful and valid contracts with these artists and bands.

69.     Upon information and belief, Defendants have intentionally interfered with Plaintiff's contracts with other bands and artists by dishonest, unfair, and improper means.

70.     Plaintiff has been damaged by Defendants wrongful conduct.

71.     Absent injunctive relief, Plaintiff has no means by protect its contracts between itself and the artists and bands with whom it has contractual relationships. Plaintiff has been and will continue to be irreparably harmed.  No amount of money damages can adequately compensate Plaintiff for the harms to its business, reputation and goodwill.

72.     By reason of the foregoing, Plaintiff is entitled to an injunction enjoining Defendants and all those acting in concert with them, from continuing to make these or any further misrepresentations.

73.     Plaintiff is also entitled to damages in an amount not yet determined.

## PLAINTIFF'S FOURTH CAUSE OF ACTION:
### TRADE LIBEL

74.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of this complaint.

75.    Upon information and belief, Defendants have knowingly made bad faith representations to third parties of false and derogatory information regarding Plaintiff's business, calculated to prevent these third parties from doing business with Plaintiff.

76.    Upon information and belief, these representations place Plaintiff in danger of a lawsuit and are substantial factors in inducing the third parties to end or not enter into business dealings with Plaintiff.

77.    Absent injunctive relief, Plaintiff has no means by protect its business, its goodwill or its reputation.  Plaintiff has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Plaintiff for the harms to its reputation and goodwill.

78.    By reason of the foregoing, Plaintiff is entitled to an injunction enjoining Defendants and all those acting in concert with them, from continuing to make these or any further misrepresentations.

79.    Plaintiff is also entitled to damages in an amount not yet determined.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants for:

a.  an order declaring that Plaintiff has not and Plaintiff's ZigZagLive website does not violate the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

b.  an order declaring that Plaintiff has not and Plaintiff's ZigZagLive website does not violate California Civil Code § 3334;

    c.  an order declaring that Plaintiff has not and Plaintiff's ZigZagLive website does not violate Oregon common law;

    d.  an order declaring that Plaintiff has not and Plaintiff's ZigZagLive website does not infringe any rights of Defendants and that Defendants' asserted claims of infringement against Plaintiff are invalid;

    e.  an order permanently enjoining and restraining Defendants from instituting any action against Plaintiff for violating 15 U.S.C. §1125(a)(1)(A), California Civil Code § 3334, Oregon common law, or any other property rights of Defendants;

    f.  an order permanently enjoining and restraining Defendants and their officers, employees, agents, representatives and licensees from further asserting that Defendants' publicity rights or other property rights in their names and likenesses are infringed by Plaintiff's truthful and accurate use;

    g.  an order permanently enjoining and restraining Defendants and their officers, employees, agents, representatives and licensees from further asserting to any parties with whom Plaintiff has a business or contractual relationship that Plaintiff's business practices are unlawful and from further interfering with Plaintiff's contractual relationships;

    h.  an order permanently enjoining and restraining Defendants and their officers, employees, agents, representatives and licensees from further making false and derogatory statements regarding Plaintiff's business practices to third parties;

    i.  damages in an amount to be determined by this Court;

    j.  enhanced damages under the Lanham Act and punitive damages under New York state law;

    k.  attorneys' fees;

    l.  costs of this action; and

    m.  such other and further relief as this Court deems just and proper.

Dated: April 9, 2008

By: _____

Marcella Ballard

BAKER & McKENZIE LLP

1114 Avenue of the Americas

New York, NY 10009

T: 212.626.4100

F: 212.310.1600

**EXHIBIT 1**



**EXHIBIT 2**

**Zig-Zag Live 2007**
**ARTIST SPONSORSHIP AGREEMENT**

SPONSORSHIP AGREEMENT (the "Agreement"), dated as of October 9, 2007, by and between **Galactic Funk Touring Inc** ("You" or "Your") and **CMJ Network Inc., as agent of and on behalf of the Zig-Zag Live Club Tour 2007** ("ZZL"), with offices located at **151 W 25th St, 12 Floor, New York NY 10001** (each a "Party" and collectively the "Parties").

1. SUBJECT OF AGREEMENT
In consideration of the mutual covenants and agreements set forth herein and in reliance upon the representations and warranties contained herein, and for other good and valuable consideration, you and ZZL agree as of the above date as follows:

You agree that ZZL will sponsor your performance ("Performance") as part of the Zig Zag Live Club Tour 2007 ("Tour") on the dates listed below, at the venues named below. The Agreement shall be wholly separate and distinct from any agreement You may have with the venue referenced below for Your performance on the date referenced below.

Dates: **November 2, 6, 17, 18, 2007**

Venues: **Georgia Theatre** (November 2), **Lincoln Theatre** (November 6), **Roseland** (November 17), **Paradise Rock Club** (November 18)

2. SIGNAGE, ADVERTISING, TABLE PLACEMENT AND MARKETING
You agree to allow the display by ZZL of banners, posters and/or other signage at your Performance on the date(s) and venue(s) listed above, with such signage to be of the following nature and size:

   No more than 1 neon Zig Zag sign (approximately 33" x 25" x 10")
   No more than 1 banner (approximate size 36" x 48")

Such signage is to be displayed in the following locations at the venue (subject to venue approval):
   1 neon sign by a ZZL exhibition table or in an appropriate and acceptable space in the performance area or behind the bar but not on, next to, or hanging over the stage Banner may be displayed throughout the venue other than on, next to, or hanging above stage
(ZZL will make best effort to keep signage out of performance area when venue space allows for it.)

Additionally ZZL will also have an exhibition table and its representatives present at the venue at the table during Your Performance. Notwithstanding the foregoing, if the venue refuses to allow the signage, table, and/or representatives, this will not be considered a breach of the Agreement. ZZL will arrange all on-site details; you are not responsible for making any on-site arrangements (hanging banner, setting up table, etc).

Further, You authorize and approve ZZL to advertise and promote your Performance in any manner deemed appropriate by ZZL including but not limited to: television, radio, print and the Internet ("ZZL Marketing") unless expressly prohibited by law. You also authorize and approve that ZZL has the rights to use the Your name, approved voice and/or approved

likeness for the purposes of advertising and marketing the Tour without further compensation, unless prohibited by law.  Where possible, ZZL will provide all ZZL Marketing to you for approval. ZZL Marketing includes the use of your approved musical compositions in the form of streamed audio (one song) and downloadable audio (one song, different from the streamed song), Your artist/band biography and approved photo or approved portions thereof on www.zigzaglive.com, or in advertisement and/or in the promotion of the Tour. Material provided by you will be available for free download for the period of October 1, 2007 – December 31, 2007. Upon expiration of download period, songs will be removed from the www.zigzaglive.com site.  Songs remain registered and published intellectual property of you and usage by ZZL Marketing does not constitute transfer of ownership.  ZZL shall not use your name, likeness, or songs in a manner which would infer that you endorse ZZL or promote its products in any way.

### 3. COMPLIMENTARY TICKETS
ZZL and agent Partisan Arts will arrange for up to ten (10) complimentary tickets to ZZL from the promoter/venue.

### 4. CONSIDERATION
In consideration of ZZL's sponsorship of your Performances, ZZL agrees to remit to you a fee in the aggregate sum of **$9000** ("Sponsorship Fee"). The Sponsorship Fee shall be paid via ZZL corporate check in the sum of **$4500** within 2 weeks of execution of this Agreement with the remaining **$4500** of the Sponsorship Fee to be paid (in the amount of **$1125** per Performance) immediately upon successful completion of each of the three Performances.

### 5. NO PARTNERSHIP OR JOINT VENTURE
Nothing contained herein shall in any way create any association, partnership, joint venture, or the relation of principal and agent between the parties hereto or be construed or evidence the intention of the parties to constitute such. Neither of the parties hereto shall hold itself out contrary to the terms of this provision.

### 6. RELEASE AND INDEMNITY
The Parties agree to indemnify and hold each other harmless and each of its successors and assigns, and its affiliates, officers, directors, shareholders, and employees, and their respective agents (collectively, the "Indemnities") from any and all manner of actions and causes of action, damages, liabilities, judgments, claims and demands whatsoever (or actions or proceedings in respect thereof) (collectively, "Damages"), which will, for all purposes of this Agreement include, but not be limited to, all costs of defense and investigation and all reasonable attorneys' fees and expenses, to which any Indemnities may become subject, insofar as such Damages arise out of or are based upon the Parties performance according to the terms and conditions contained herein or related thereto, whether any action, claim, suit, or proceeding giving rise to such Damages is instituted by or brought on behalf of the Parties or a third party, provided reduced to adverse judgment or settled with consent, except that neither Party shall be so indemnified to the extent that such Damages have arisen out of such Party's gross negligence, bad faith, willful misconduct or malfeasance in connection with the performance by that Party of its responsibilities hereunder. The provisions of this Section 5 shall survive termination of this Agreement.

### 7. LIMITATION OF LIABILITY
Other than due to gross negligence, bad faith, willful misconduct or malfeasance, neither Party will be liable to the other party or any third party for lost profits, loss of goodwill, or any special, indirect, consequential or incidental damages, however caused and on any theory of liability, arising in any way out of this Agreement or the relationship between the Parties. This limitation shall apply even if a party has been advised of the possibility of such damages, and notwithstanding any failure of

essential purpose of any limited remedy. Notwithstanding the foregoing, ZZL specifically warrants that it will not do anything that will subject you to criminal or civil liability or penalties.

## 8. CONFIDENTIALITY; GENERAL PROVISIONS

The Parties agree that they will not use, or permit the use of, any of the information relating to any other Party hereto, furnished or to be furnished to each other in connection with this Agreement ("Information"), other than in connection with the transactions contemplated by this Agreement. The Parties also agree that they will not disclose, divulge, provide or make accessible (collectively, "Disclose") any of the Information to any person other than their responsible officers, employees, advisors, accountants or attorneys without the prior written consent of the other Party except as required by law or regulation.

The parties hereto agree that all understandings and agreements heretofore made between them with respect to the subject matter hereof are merged in this Agreement, which fully and completely expresses their agreement with respect to the subject matter hereof. There are no promises, agreements, conditions, understandings, warranties, or representations, oral or written, express or implied, between the parties hereto, other than as set forth in this Agreement. All prior agreements among the parties with respect to the subject matter hereof are superseded by this Agreement, which integrates all promises, agreements, conditions and understandings between the parties with respect to the subject matter hereof.

No waiver, modification or amendment of this Agreement shall be binding unless agreed to in writing and signed by an authorized officer of each of the Parties.

The parties acknowledge that (i) they have each had the opportunity to consult with independent counsel of their own choice concerning this Agreement and have done so to the extent they deem necessary, and (ii) they have each read and understand the Agreement, are fully aware of its legal effect, and have entered into it freely based on their own judgment and not on any promises or representations other than those contained in the Agreement.

## 9. GOVERNING LAW AND CHOICE OF FORUM

This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the conflicts of laws principles thereof. Each party hereby irrevocably submits that the proper forum for any action of any type, whether legal or equitable in nature, brought by either party to this Agreement, which action arises from or is related to any provision of this Agreement, shall be deemed to be under the jurisdiction of the courts of the State of New York, sitting in New York County, and the courts of the United States of America for the Southern District of New York.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

By: _____

Robert K. Haber

**FOR ZZL**
**151 W 25th St, 12 Floor, New York NY 10001**
**Fax: 917.606.1914**

By: _Galactic Funk Tourings, Inc._
_Schelly Management, Inc. Manager_

_Paul Peck_
Print Name

_Manager_
**AFFILIATION WITH ARTIST**

_64 West 3rd St. - Suite 205_
**Address**
_New York, NY. 10003_

**EXHIBIT 3**





## NEWS

### GALACTIC BONNAROO SHOW RECAP

PHOTO BY RYAN MASTRO

As most are aware, Galactic assembled a staggering assembly of hip hop talent for their late night show at Bonnaroo. The band debuted a large number of selections from their upcoming record 'From the Corner to the Block' alongside a variety of their classic high energy instrumentals throughout. As they are prone to do at Bonnaroo, Galactic delivered another remarkable set. This time they played for 3 and a half hours straight with no setbreak. Special guests included Boots Riley of the Coup, Chali 2na of Jurassic 5, Mr. Lif, Lyrics Born, Lateef the Truth Speaker, Gift of Gab of Blackalicious, Nino Moschella and more. Galactic's new record comes out on Anti- August 21st.

UPDATE ... READ THE LATEST

**EXHIBIT 4**

**From:** Anthony McNamer [mailto:anthony@mcnamerlaw.com]
**Sent:** Monday, April 07, 2008 2:39 PM
**To:** Ballard, Marcella
**Cc:** Anthony McNamer
**Subject:** Re: Attached Complaint

An interesting move on your client's part. Did it occur to you and your client that now, instead of facing claims by 3 groups, your client will now likely be facing claims by 30-40 groups. My clients have contacts with nearly every artist that appeared on the site.

In any event, I will let you know about the acceptance in due course. I am not a New York lawyer, as you know.

You should have our complaint on Wednesday. Let me know if your firm will accept service for that.

We're still amenable to settlement of this matter. If your client is interested in settlement, it should make that interest clear immediately, before this reaches a scale that will dramatically decrease any chance of settlement.

**Anthony E. McNamer, Esq.**
**McNamer and Company**
519 SW Third Ave, Suite 601
Portland, Oregon 97204
ph: 503.727.2504  fax: 503.727.2501
<http://www.mcnamerlaw.com/attorneysMcNamerBio.html>
*Please Note Name and Email Change*

On Apr 7, 2008, at 9:36 AM, Ballard, Marcella wrote:

Mr. McNamer:
Attached is a complaint filed April 4, 2008. Please reply by return email whether you will accept service on behalf of the named defendants. Also attached is USDC SDNY waiver of service form. Be advised that if you do not accept service and end up representing the named defendants, your clients will be liable for the costs of service for the summons and complaint. I have also enclosed Judge Scheindlin's rules and procedures.

Marcella Ballard
Counsel, Intellectual Property Group
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: +1 212 626 4664
Fax: +1 212 310 1643
marcella.ballard@bakernet.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Click here or visit www.bakernet.com/disclaimer_bm for other important information concerning this message.
<Waiver of Service.pdf><Complaint_08CV03383.pdf><Judge Scheindlin Rules.pdf>

Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
T: 212.626.4100
F: 212.310.1600

*Attorneys for Plaintiff*

United States District Court
Southern District of New York



| | |
|---|---|
| National Tobacco Company, LP | Case No.   08 CV 03383 (SAS) |
| Plaintiff, | |
| -against- | |
| Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving, p.k.a., Lifesavas, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served by email and regular mail a copy of this Amended Complaint on April 9, 2008, on counsel for Defendants at the address set forth below:

Anthony E. McNamer, Esq.
McNamer and Company
519 SW Third Ave, Suite 601
Portland, Oregon 97204

email: anthony@mcnamerlaw.com

Dated: April 9, 2008

By: _____

Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10009
T: 212.626.4100
F: 212.310.1600