David B. Sudzus
Russell J. Chibe
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 569-1000
Facsimile: (312) 569-3000

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL TOBACCO COMPANY, L.P. | ECF Case |
| Plaintiff, | 08-CV-03383(SAS) |
| v. | |
| TIMOTHY PARKER and XAVIER MOSLEY, p.k.a. BLACKALICIOUS, RAYMOND RILEY p.k.a. BOOTS RILEY, SOLOMON DAVID and MARLON IRVING, p.k.a.LIFESAVAS, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND FORUM NON CONVENIENS** |
| Defendants. | |

Now come the Defendants TIMOTHY PARKER and XAVIER MOSLEY, p.k.a.

Blackalicious, RAYMOND RILEY p.k.a. Boots Riley, and SOLOMON DAVID and MARLON

IRVING, p.k.a. Lifesavas (collectively "Defendants"), by and through their attorneys,

DRINKER BIDDLE & REATH LLP, and in support of their Motion to Dismiss For Improper

Venue and Forum Non Conveniens state as follows:

### I. BACKGROUND

Defendants Solomon David, Xavier Mosley, Timothy Parker and Raymond Riley are

residents of Alameda County, California. Defendant Marlon Irving is a resident of Portland,

Oregon. Defendants Parker and Mosley are nationally-touring recording artists known

professionally as Blackalicious. Defendants David and Irving are nationally-touring recording

artists known professionally as Lifesavas.  Defendant Riley is a nationally-touring recording artist known professionally as Boots Riley.

Plaintiff National Tobacco Company, L.P. (hereinafter "Plaintiff" or "NTC") is a Delaware limited partnership doing business at all times within Alameda County in the State of California.

In March of 2008, the Defendants learned that they were being falsely identified and referred to as "Zig-Zag Artists" on the website ZigZagLive.com (the "Website").  The Website was created by Plaintiff as part of a national campaign promoting Zig-Zag rolling paper, a product distributed exclusively by NTC.

Upon discovering the Website and the false representation contained therein, Defendants sent a letter to Plaintiff on March 28, 2008, demanding that it cease its violation of their right of publicity and compensate each of the Defendants for the nearly two years during which it has been unlawfully using their names, likenesses and biographies to promote NTC products.  (See letter dated March 28, 2008, attached hereto as Exhibit 1).

Defendants followed their initial request that plaintiff ceases its violation of their right of publicity with additional overtures to resolve this matter with Plaintiff.  This included a final settlement demand dated April 11, 2008 which also referenced possible lawsuits which Defendants planned to file against Plaintiff in the United States District Court for the Northern District of California.  (See letter dated April 11, 2008, attached hereto as Exhibit 2).

Rather than engage in settlement negotiations with Defendants, and unbeknownst to Defendants, Plaintiff instead chose strategically to file a preemptive retaliatory complaint against the Defendants, initiating the present matter in this Court on April 9, 2008.

- 2 -

Prior to being properly served in the present matter, Defendants initiated the aforementioned lawsuits against NTC on April 11, 2008 in the U.S. District Court, Northern District of California. *See Riley et al. v. National Tobacco Company, LP*, Complaint, Case No. 3:08-cv-01931-JSW (N.D. Cal., Apr. 11, 2008), attached hereto as Exhibit 3; *see also Parker et al. v. National Tobacco Company, LP*, Complaint, Case No. 3:08-cv-10933-WHA (N.D. Cal., Apr. 11, 2008), attached hereto as Exhibit 4. It was not until seven days after the lawsuits in the Northern District of California were filed, on April 18, 2008, that the first of four Defendants was served with Plaintiff's complaint in the present matter.

## II.  VENUE IS IMPROPER WHERE PLAINTIFF IS NOT A NEW YORK RESIDENT AND NO SUBSTANTIAL EVENT TOOK PLACE IN NEW YORK

Venue is the defendant's personal privilege. *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979). A defendant may challenge venue on two grounds. First, a defendant may move to dismiss or transfer a matter where venue is improper in that particular district. 28 U.S.C. §1406; *see, e.g., D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F.Supp. 320 (S.D.N.Y. 1996). Additionally, a defendant may move to transfer a matter to a more convenient district. 28 U.S.C. §1404; *see, e.g., Kolko v. Holiday Inns, Inc.*, 672 F.Supp. 713 (S.D.N.Y. 1987). When a defendant moves to dismiss a complaint based on improper venue, the burden of showing that New York is the proper forum for this lawsuit rests with the plaintiff. *See E.P.A. ex rel. McKeown v. Port Authority*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001).

Where federal jurisdiction is not derived solely from diversity of citizenship and the defendants do not reside in the same state, jurisdiction is proper where either a substantial part of the events giving rise to the action occurred or, if no such venue exists, the district where any one defendant may be found. 28 U.S.C. § 1391.

- 3 -

In its Amended Complaint (hereinafter "Complaint"), Plaintiff relies specifically on two false assertions in arguing that venue in the Southern District of New York is proper. Plaintiff first makes the blanket statement that "a substantial part of the events giving rise to Plaintiff's claims occurred in this district." *See* Complaint at ¶ 8. Plaintiff further asserts that venue is somehow proper because of a forum selection clause in an "Artist Sponsorship Agreement" between the Plaintiff and Galactic Funk Touring, Inc., an entity that is not a party to the present matter. Once these vacuous assertions are disproved, Plaintiff has no legitimate basis for arguing that the Southern District of New York is a proper venue for this matter.

A.    **Plaintiff Has Failed To Establish That A Substantial Event Giving Rise To This Litigation Took Place In New York.**

Plaintiff's first argument fails as not a single event giving rise to this litigation took place in New York. The only event cited in the Plaintiff's complaint which purportedly took place in New York was a single concert performance, which Plaintiff self-servingly mentions for the sole purpose of attempting to establish venue. *See* Complaint at ¶ 7. However, the single referenced concert performance can in no way be considered "substantial" for venue purposes. Based upon a review of Plaintiff's allegations, Defendants' allegedly tortious acts include the threat of litigation, defamatory statements and libelous statements. None of these tortious acts are alleged to have taken place during the aforementioned concert performance, nor are these tortious acts alleged to have taken place at any other time in the State of New York. Absent some qualification of what made the single concert performance "substantial," in the context of the Complaint, let alone in the overall context of the present dispute, the Plaintiff has failed to demonstrate that venue in the Southern District of New York is proper. *See, e.g., Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 434 (2d Cir. 2005) (in which the court found the mailing of six rejection letters to New York City residents did not qualify as

- 4 -

substantial events in an anti-trust case where "the vast majority" of actions supporting the plaintiff's claims took place outside of New York and none of the 28 defendants were in the Western District of New York).

**B.    The Forum Selection Clause In The Contract Signed By Plaintiff Is Not Controlling Because The Defendants Were Not Parties To The Contract.**

Plaintiff's second argument fails because the referenced contract containing the choice of venue provision on which Plaintiff specifically relies upon was entered into by Plaintiff and Paul Peck ("Peck"), a manager of "Galactic Funk Touring, Inc.," an entity that is not a party to this matter. *See* Complaint at Exhibit 2. Second Circuit Courts have held that forum selection clauses such as that specifically relied upon by Plaintiff have been deemed inapplicable to non-signatories. *See Yung v. Lee*, 160 Fed. Appx. 37, 40 (2d Cir. 2005) ("[W]e are not convinced by plaintiffs' argument that a forum selection clause must be accorded special weight against non-signatories to the agreements."). Despite Plaintiff's unfounded and self-bolstering assertion that Peck "appeared to have control and give consent on behalf of Defendants as a part of the Galactic Funk Touring group" (*see* Complaint at ¶ 20), the contract itself does not mention a single Defendant to this action, and was not signed by a single Defendant to this action.

As the Plaintiff has failed to meet its burden of establishing that the Southern District of New York is a proper venue, dismissal is appropriate. While courts may decline to dismiss complaints where the interest of justice requires, the concurrently pending actions in the Northern District of California assure that the dispute between these parties will be litigated in a just manner. Further, the Second Circuit has found that where the plaintiff should have realized through due diligence that a venue was improper, outright dismissal is appropriate even where the interest of justice would otherwise warrant transfer. *See Spar, Inc. v. Information Resources,*

- 5 -

*Inc.*, 956 F.2d 392, 294 (2d Cir. 1992).  Given the blatant lack of substantive connections

between this matter and the State of New York, dismissal is warranted.

**C.    The U.S. Code Dictates That The Northern District Of California Is A Proper
        Venue As Four Of Five Defendants Reside Therein.**

In the event that the Court decides to transfer this matter, a proper venue can be found in

the Northern District of California.  As the Plaintiff has failed to assert even a single substantial

event that precipitated this litigation, and as Defendants live in two different states (neither of

which is New York), 28 U.S.C. § 1391 dictates that the proper forum is any District in which a

Defendant resides.  Accordingly, this Court should transfer this matter to the Northern District of

California, in which four of the five Defendants reside and related litigation is currently pending.

*See Industri & Skipsbanken A/S v. Levy*, 183 B.R. 58 (S.D.N.Y. 1995) (in which the court

transferred a case to the Southern District of Texas—where one defendant resided—pursuant to

28 U.S.C. § 1391(b), as a related bankruptcy matter was pending therein).

**III.  AS THIS MATTER HAS NO SUBSTANTIAL CONNECTION TO THE STATE OF
NEW YORK AND NO PARTY OR POTENTIAL WITNESS RESIDES THEREIN,
DISMISSAL IS PROPER UNDER THE DOCTRINE OF FORUM NON CONVENIENS**

Analysis under the doctrine of *forum non conveniens* similarly suggests that this matter

should be dismissed or, in the alternative, transferred to the Northern District of California.  A

federal court may dismiss or transfer a matter under the doctrine of *forum non conveniens* where

the plaintiff's chosen forum is inconvenient or contrary to the interest of justice.  *See Virgin*

*Atlantic Airways Ltd. v. British Airways PLC*, 872 F.Supp. 52, 61 (S.D.N.Y.1994) ("The 'central

purpose' of forum non conveniens analysis is to determine whether a trial will be most

convenient and will serve the interest of justice").

Courts in the Second Circuit have employed a three-step analysis when determining

whether to dismiss a lawsuit under the doctrine of *forum non conveniens. Aguas Lenders*

*Recovery Group, LLC v. Suez S.A.*, 2008 WL 612669 (S.D.N.Y., March 8, 2008).  First, the court

determines whether there is an adequate alternative forum for the lawsuit.  Second, the court

determines the degree of deference to give to the plaintiff's choice of forum.  Third, the court

weighs the private and public interests to decide which forum best serves the interests of

convenience and justice.  *Id.*

Courts have found that an alternative forum is specifically appropriate if, wherein said

alternative forum: "(1) the defendants are subject to service of process there; and (2) the forum

permits 'litigation of the subject matter of the dispute.'" *Alfadda v. Fenn*, 159 F.3d 41, 45 (2d

Cir. 1998) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981)).  As demonstrated

in the above venue analysis (see *supra* at Section I(C)), the Northern District of California is an

appropriate alternative forum meeting both of these court dictated requirements.

## A.    Plaintiff's Choice Of Venue Should Receive No Deference.

Plaintiff's choice of the Southern District of New York as a forum should be given no

deference in this matter.  The deference given to a plaintiff moves on a sliding scale based on

multiple considerations including "the plaintiff's or the lawsuit's bona fide connection to the

forum of choice," which encompasses "convenience of the plaintiff's residence in relation to the

chosen forum, the availability of witnesses or evidence to the forum district." *LaSala v. UBS,

AG*, 510 F. Supp. 2d 213, 223 (S.D.N.Y. 2007) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d

65, 72 (2d Cir. 2001) (en banc)).  Additionally, Second Circuit courts have repeatedly found that

the relative means of the parties is an important factor in ruling on a motion to transfer for *forum

non conveniens*.  *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d

289, 341 (S.D.N.Y. 2003) ("A countervailing factor [in ruling on a motion to transfer for *forum

non conveniens*] is the relative means of the parties"); *see also WIWA v. Royal Dutch Petroleum

Co.*, 226 F.3d 88, 101 (2d Cir. 2000).

- 7 -

In the immediate matter, all prescient facts weigh against the current forum. Plaintiff itself is headquartered in Lexington, Kentucky, approximately 700 miles away from New York City. Additionally, with Defendants located in both California and Oregon, Plaintiff has failed to even imply that any evidence or any single witnesses would be located anywhere near New York. Lastly, given that the Plaintiff is a national corporation while the Defendants are individuals and are each independent recording artists, Plaintiff has far more significant resources, financial and otherwise, to willfully and strategically litigate in a foreign venue. This fact is belied by Plaintiff's conscious and deliberate decision to file the present matter in the Southern District of New York, which itself is a foreign venue for the Plaintiff. *See* Declaration of Solomon David In Support Of Motion To Dismiss For Improper Venue and Forum Non Conveniens, attached hereto as Exhibit 5, at ¶ 6; *see also* Declaration of Marlon Irving In Support Of Motion To Dismiss For Improper Venue and Forum Non Conveniens, attached hereto as Exhibit 6, at ¶ 6; Declaration of Xavier Mosley In Support Of Motion To Dismiss For Improper Venue and Forum Non Conveniens, attached hereto as Exhibit 7, at ¶ 6; Declaration of Timothy Parker In Support Of Motion To Dismiss For Improper Venue and Forum Non Conveniens, attached hereto as Exhibit 8, at ¶ 6; and Declaration of Raymond Riley In Support Of Motion To Dismiss For Improper Venue and Forum Non Conveniens, attached hereto as Exhibit 9, at ¶ 6.

**B.     Public Factors Weigh In Favor Of The Northern District Of California As The Appropriate Forum For A Dispute Between These Parties.**

Initially, public factors weigh strongly in favor transferring the case. Plaintiff is asking this Court and the people of New York to expend significant resources to litigate a dispute between residents of California, Oregon and Kentucky for no real reason other than perhaps the fact that certain Defendants performed as guests during a concert in New York. None of the

- 8 -

relevant facts of this case have any connection to New York. New York laws were not and are

not invoked or involved in this matter. To allow this matter to proceed in the Southern District

of New York is to serve up the resources of the people of New York *carte blanch* to any national

or international company that somehow interacts with the State of New York in any miniscule

manner whatsoever, no matter how tangential that interaction is to the actual facts in dispute.

Additionally, with issues central to this matter already being litigated in the Northern District of

California, transferring this matter will prevent redundant or duplicative efforts that would likely

arise from these two courts, three thousand miles apart, considering virtually identical facts and

arguments from the identical parties. *See Industri & Skipsbanken A/S v. Levy*, 183 B.R. 58

(S.D.N.Y. 1995); *see also* Exhibit 5, at ¶ 7; *see also* Exhibit 6, at ¶ 7; Exhibit 7, at ¶ 7; Exhibit 8,

at ¶ 7; and Exhibit 9, at ¶ 7.

**C.    Private Factors Demonstrate That The Northern District Of California Is A Superior Forum For Hearing The Dispute Between These Parties.**

Private factors likewise weigh in favor of transfer. The Supreme Court has enumerated

private factors to consider as "the relative ease of access to sources of proof; availability of

compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing,

witnesses; possibility of view of premises, if view would be appropriate to the action; and all

other practical problems that make trial of a case easy, expeditious and inexpensive." *See Gulf

Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Given that this matter revolves around a contract

and subsequent communication regarding said contract, the viewing of premises is not a

concern. As five of the six parties of the present matter are residents of the West Coast,

adjudicating this matter in the Northern District of California would avoid unnecessary

difficulties such as increased expenses on the part of all parties and inefficiencies in

communicating with Defendants and other potential fact witnesses, many of whom are in the

entertainment industry, residing in California or Oregon. *See* Exhibit 5 at ¶ 6; *see also* Exhibit 6 at ¶ 6; Exhibit 7 at ¶6; Exhibit 8 at ¶ 6; and Exhibit 9 at ¶ 6.

Based on the foregoing, and the allegations in this matter, both the private and public interest factors strongly favor this Court's dismissal of this case on the grounds of *forum non conveniens*. In the alternative, transfer to the Northern District of California is appropriate.

WHEREFORE, Defendants TIMOTHY PARKER and XAVIER MOSLEY, p.k.a. Blackalicious, RAYMOND RILEY p.k.a. Boots Riley, and SOLOMON DAVID and MARLON IRVING, p.k.a. Lifesavas request that this Court enter an Order dismissing Plaintiff's Complaint on the grounds of improper venue and *forum non conveniens*, or in the alternative transfer this motion to the Northern District of California.

Dated: May 29, 2008

s/David B. Sudzus
David B. Sudzus
Russell J. Chibe
Drinker Biddle & Reath LLP
191 N. Wacker
Suite 3700
Chicago, IL 60606
(312) 569-1000 (phone)
(312) 569-3000 (fax)
david.sudzus@dbr.com

David B. Sudzus
Russell J. Chibe
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone:  (312) 569-1000
Facsimile:  (312) 569-3000

CH/ 29502.1

United States District Court
Southern District of New York

| | |
|---|---|
| NATIONAL TOBACCO COMPANY, L.P. | ECF Case |
| Plaintiff, | 08-CV-03383(SAS) |
| v. | |
| TIMOTHY PARKER and XAVIER MOSLEY, p.k.a. BLACKALICIOUS, RAYMOND RILEY p.k.a. BOOTS RILEY, SOLOMON DAVID and MARLON IRVING, p.k.a.LIFESAVAS, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 29, 2008 I caused a true and correct copy of Memorandum of Law in Support of Motion to Dismiss for Improper Venue and Forum Non Conveniens to be electronically filed with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following to all counsel for Plaintiff and Defendants as listed below:

Marcella Ballard                                    **Attorneys for Plaintiff**
Baker & McKenzie LLP
1114 Avenue of the Americas
New York, NY 10009

Anthony E. McNamer, Esq.                  **Attorneys for Defendant Timothy**
McNamer and Company                       **Parker and Xavier Mosley, p.k.a.**
519 SW Third Ave., Suite 601              **Blackalicious, Raymond Riley p.k.a.**
Portland, Oregon 97204                      **Boots Riley, Solomon David and Marlon**
                                                          **Irving, p.k.a. Lifesavas**

Dated: May 29, 2008                                    s/David B. Sudzus
                                                          David B. Sudzus
                                                          Russell J. Chibe
                                                          Drinker Biddle & Reath LLP
                                                          191 N. Wacker Drive, Suite 3700
                                                          Chicago, Illinois 60606
                                                          Telephone: (312) 569-1000
                                                          Facsimile: (312) 569-3000

- 11 -



# McNamer and Company

Intellectual Property • Entertainment • Sports • Litigation • Corporate     *Portland*
                                                                          *Los Angeles*

Anthony McNamer
503.727.2504
anthony@mcnamerlaw.com

March 28, 2008

CONFIDENTIAL SETTLEMENT COMMUNICATION

VIA FACSIMILE (502-774-9262)

National Tobacco Company, LP
General Counsel
3029 W Muhammad Ali Blvd.
Louisville, KY 40212-2238

Re: Lanham Act and Right of Publicity Violations

This firm represents the musical group consisting of Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley and the musical group consisting of Solomon David and Marlon Irving p.k.a. Lifesavas. It has come to our attention that since June 12, 2006, October 17, 2007 and October 25, 2007 respectively, you have been using my clients' names, likeness and biographies to promote Zig-Zag brand products on the ZigZagLive.com website (the "Website"). Your unlicensed and illegal use of my clients' names, likeness, and biographies constitutes violations 15 U.S.C. § 1125(a)(1)(A) and various state right of publicity laws, including California Civil Code §3344 and the common law of Oregon. My clients are particularly damaged by this use because they would never license use of their names, likeness and biographies to promote tobacco products. My clients' music does not promote smoking and they are appalled that their fans now perceive them to be profiting from the sale of tobacco products. Your persistent illegal acts have made it appear to these fans that they have "sold out" to a tobacco company. In addition to all parties' unwillingness to promote tobacco products, Boots Riley's music presents a decidedly anti-corporate message. Obviously, his apparent sponsorship by a tobacco company flies directly in the face of the message he has spread throughout his career.

Thus, while under normal circumstances my clients' actual damages would likely be a reasonable licensing fee, under the present circumstances there is no licensing fee that my clients would find reasonable. However, since monetary damages (and your immediate removal of my clients' names, likeness and biographies) are what we must work with, we have investigated what a standard licensing fee would be.

We are informed that if your company had sponsored my clients' live performances (which is what your company is doing in relation to many of the sponsored acts), you would pay between $3000 and $5000 per show. During the period of your illegal use, Blackalicious performed 57 shows, Boots Riley performed 50 shows and Lifesavas performed 27 shows. Thus, ignoring the fact that a license fee would be impossible to negotiate, you would have paid Blackalicious between $171,000 and $285,000, Boots



Riley between $150,000 and $250,000 and Lifesavas between $81,000 and $135,000. Also, with the sizable amount of cross marketing you've done (*e.g.* through sonicbids.com and CMJ) in relation to this campaign, it would not surprise me if the Website has been viewed several millions of times – thus resulting in far greater publicity than show sponsorships would ever garner.

Though my clients are entitled $285,000, $250,000 and $135,000 respectfully, and additionally are entitled to exemplary damages and their attorneys fees and costs, Blackalicious will settle their claims for $171,000, Boots Riley will settle his claims for the payment of $150,000 and Lifesavas will settle their claims for $81,000. Further, you must immediately cease all use of their names, likeness and biographies, including all such use on the Website.

Our offer will remain open until April 4, 2008. If we have not settled this matter by then, my clients will have no choice but to issue public statements decrying the unauthorized use of their names, likeness and biographies by a tobacco company so as to mitigate any further damage to their reputation. My clients will also file suit in California and Oregon (I am licensed in both states).   It obviously would be best for all parties to quickly and confidentially settle this matter. I sincerely hope that is possible under the terms set forth above.

I look forward to your prompt response.


Very truly yours,

McNamer and Company



Anthony McNamer



# MCNAMER AND COMPANY

---

Intellectual Property • Entertainment • Sports • Litigation • Corporate          *Portland*
                                                                                  *Los Angeles*

Anthony McNamer
503.727.2504
anthony@mcnamerlaw.com

April 11, 2008

VIA ELECTRONIC MAIL (Marcella.ballard@bakernet.com)

CONFIDENTIAL SETTLEMENT COMMUNICATION

Marcella Ballard
Baker & McKenzie LLP
1114 Avenue of Americas
New York, NY 10036

Re: Blackalicious et al v. National Tobacco Company LP

Included with this letter you will find the electronic versions of the complaints that were filed today in the Northern District of California, Oakland Division and served on your client through its registered agent CT Corporation System. I have not yet received my conformed copy, so I don't yet have the case numbers.

While my clients have filed and served their complaint, and are prepared to pursue this matter through trial, they thought they would make one final attempt at settlement prior to the press releases going out on Wednesday. Blackalicious is willing to settle their claims for the payment of $100,000 ($50,000 each). As you will note in their Complaint, they did not ever play a single show on the Zig-Zag tour. The photo used by your client is actually from the Bonnaroo Music Festival. So your client's absurd "defense" regarding Galactic is not even arguably applicable to Blackalicious. Moreover, your client used Blackalicious's name, photo and biography for nearly two years. Boots Riley is willing to settle his claims for $40,000. And Lifesavas are willing to settle their claims for $60,000 ($30,000 each). This is our final settlement offer. It's half of the previous offer, and represents a significant concession on my clients' part. Your client has until EOD Tuesday to accept this offer. After that we will simply move forward with the lawsuit.

As to your client's lawsuit in SDNY, as I told you, I am not a New York lawyer. I have no authority to accept service on my clients' behalf for a New York lawsuit. My clients are in the process of securing local counsel, but I cannot guarantee when that will happen. As such, if you are in a hurry to serve my clients I would suggest you personally serve them.

On a related note, I'm sure you are fully aware that SDNY is the improper forum. That case will obviously be removed. Might I suggest you simply dismiss that case and defend the substantive actions filed today in Oakland. Further, a significant part of the relief requested is a prior restraint, which the Court cannot possibly grant. Additionally, your inclusion of confidential settlement communications in



519 SW Third Avenue, Suite 601 • Portland, Oregon 97204 • main: 503.727.2500 • fax: 503.727.2501 • www.mcnam...

a pleading is improper and unethical. That is an issue that will obviously need to be addressed by my clients' New York counsel, but I just wanted you to apprise you of the issue.

I look forward to your prompt response to our imminently reasonable offer, and hope this matter is settled before your client spends significant sums prosecuting these three cases.

Very truly yours,

McNamer and Company

/Anthony McNamer/

Anthony McNamer

**ANTHONY E. MCNAMER CSB #178911**
Anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon 97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs



## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RAYMOND RILEY** p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>**DEFENDANT.** | Case No. C08-01931 EMC<br><br>**COMPLAINT FOR:**<br><br>1) **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**<br>2) **MISAPPROPRIATION OF RIGHT OF PUBLICITY (California Common Law and Cal. Civ. Code §3344)**<br>3) **UNFAIR COMPETITION (Cal. Bus. and Prof. Code §17200 *et. seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

For their complaint against Defendant, Plaintiffs allege as follows:

### I.

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 15 U.S.C § 1121 because it

arises under the unfair competition laws of the United States.   The Court also has jurisdiction

pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the

Page 1 – PLAINTIFFS' COMPLAINT

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500



amount in controversy exceeds $75,000.

2.     This Court has personal jurisdiction over the defendants, and venue of this action

is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because this action arises from

the transaction of business in California or, alternatively, out of a tortious act committed in

California or with expected consequences within this state.

## II.

## THE PARTIES

3.     Plaintiff Raymond Riley is a resident of Alameda County, California and is

professionally known as Boots Riley.

4.     Plaintiff Solomon David is a resident of Alameda County, California and Plaintiff

Marlon Irving is a resident of Portland, Oregon, and they are professionally known as the

musical group Lifesavas

5.     Defendant National Tobacco Company, LP ("National Tobacco") is a Delaware

limited partnership doing business at all times within the Alameda County in the State of

California.

## III.

## FACTUAL ALLEGATIONS

6.     Boots Riley is a musical artist and a co-founder of the musical group The Coup.

Boots Riley was raised amidst political action in Oakland, California, where, since the age of

fifteen, he's been involved in organizing and inspiring youth.  From student organizing in

Oakland's public schools, to serving on the central committee for the Progressive Labor Party, to

holding the presidential position for InCAR (International Committee Against Racism), and

organizing to build California's Anti-Racist Farm Workers' Union, Boots Riley has been an

Page 2 – PLAINTIFFS' COMPLAINT

integral part of a progressive struggle for positive change through culture and has used his music as a medium to promote that change. Boots Riley's music and image presents a decidedly anti-corporate message.

7.     Lifesavas are part of the positive hiphop movement. They are a musical group who have built their career addressing such issues as politics, family, social justice, drug abuse, religion and racial progress. Their music is conscientious and their image has always been about motivating kids and adults to stay drug and alcohol free. Their music also encourages their fans to be aware of the problems associated with such abuses.

8.     National Tobacco is a large tobacco company. Through a license, they are the exclusive United States (and Canada) distributor of Zig-Zag brand rolling papers.

9.     Beginning in April 2006, National Tobacco began an enormous national and international marketing campaign centered on the website ZigZagLive.com (the "Website"). As part of this marketing campaign they also sponsored a national music tour entitled Zig-Zag Live Club Tour (the "Tour"), which began in 2006 and continues to this day. On information and belief, National Tobacco paid musical artists to sponsor and promote their products. National Tobacco entered into agreements with sponsored artists granting National Tobacco specific rights to use sponsored artists' names, likenesses, and biographies on the Website. These sponsored and endorsing artists were featured prominently on the Website, and the Tour also featured these sponsored artists along with other non-sponsored artists.

10.     On information and belief National Tobacco spent millions of dollars on this ZigZagLive.com marketing campaign and continues to use the Website to promote its products. Indeed, the ZigZag.com website contains almost no content. The Website, however, contains substantial content and accounts for nearly all of Zig-Zag's web presence and branding.

Page 3 – PLAINTIFFS' COMPLAINT

11.     On the Website, the "sponsored" artists are identified by National Tobacco as "ZIG-ZAG ARTISTS'. Plaintiffs were never sponsored by National Tobacco and never agreed to endorse National Tobacco's products or to become "ZIG-ZAG ARTISTS".

12.     National Tobacco's products effectively represent a corporate ideology that puts profits above the public's health and well-being. Plaintiffs have never endorsed tobacco products, and would never endorse tobacco products.

13.     On or about October 17, 2007, National Tobacco began using Boots Riley's names, photograph and biography to promote Zig-Zag brand products on the Website. National Tobacco continued to use Boots Riley's name, photograph and biography to promote its products through April 4, 2008. A true and correct copy of the unauthorized Boots Riley promotional materials used by National Tobacco on the Website, which false identifies Boots Riley as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit A.

14.     On or about October 25, 2007, National Tobacco began using Lifesavas' name, photograph and biographies to promote Zig-Zag brand products on the Website. National Tobacco continued to use Lifesavas' name, photograph and biographies to promote its products through April 4, 2008. A true and correct copy of the unauthorized Lifesavas promotional materials used by National Tobacco on the Website, which falsely identify Lifesavas as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit B.

15.     Given the message Plaintiffs have spread throughout their careers, the use of Plaintiffs' names, photographs and biographies to promote Big Tobacco's products and agenda is particularly damaging. Plaintiffs would never license use of their names, photographs and biographies to promote tobacco products. Lifesavas, for example, share the same view as the National Association of African-Americans for Positive Imagery, who has shown that the

Page 4 – PLAINTIFFS' COMPLAINT

African-American community has been exploited by tobacco companies. Indeed, significant research confirms that tobacco companies have specifically targeted the African-American community.

16.     Such apparent affiliation with, and sponsorship of, National Tobacco and its products has severely damaged Plaintiffs' reputation, as their fans now perceive Plaintiffs to be profiting from the sale of tobacco products.

17.     On information and belief, National Tobacco paid their sponsored musicians up to $5,000 per sponsored show during such sponsored artists' endorsement of National Tobacco's products and promotion on the Website.

18.     During the period of National Tobacco's illegal use of Plaintiffs' names, photographs and biographies, Boots Riley performed 50 shows and Lifesavas performed 27 shows.  Thus, had Boots Riley entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Boots Riley's right of publicity, National Tobacco would have paid approximately $250,000.  Had Lifesavas entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Lifesavas's right of publicity, National Tobacco would have paid approximately $135,000.

### FIRST CAUSE OF ACTION

False Designation of Origin (15 U.S.C. § 1125 *et seq.*)

19.     Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 18, inclusive.

20.     National Tobacco's use of Plaintiffs' names, photograph and biographies constitutes a false designation of origin or description in that it is likely to cause confusion, or to

Page 5 – PLAINTIFFS' COMPLAINT

cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiffs' with National Tobacco, and Plaintiffs' sponsorship or approval of National Tobacco's goods and commercial activities. Thus, National Tobacco's activities constitute violations of 15 U.S.C. § 1125(a).

21.    National Tobacco's acts of unfair competition are willful and deliberate and are made with the intent to reap the benefit of Plaintiffs' names, celebrity, goodwill and reputations.

22.    By reason of National Tobacco's acts of false designation, description and representation as alleged above, Plaintiffs have suffered, and will continue to suffer, lost revenue and substantial damage to their reputation and goodwill.

23.    Additionally, National Tobacco has unfairly profited from the acts of false designation, description and representation as alleged above, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

Misappropriation of the Right of Publicity (Common Law and Cal. Civ. Pro. § 3344)

24.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 23, inclusive.

25.    Plaintiffs have an exclusive right of publicity in the use of their names, photographs and biographies.

26.    National Tobacco misappropriated the rights of publicity owned and controlled by Plaintiffs by displaying Plaintiffs' names, photographs and biographies for National Tobacco's commercial gain without authorization.

27.    As a direct and proximate result of National Tobacco's conduct as aforesaid, Plaintiffs have been damaged by lost income in an amount to be determined at trial, but in no

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

event less than $250,000 for Boots Riley and $135,000 for Lifesavas.

28.     National Tobacco acted deliberately to injure Plaintiffs and otherwise in conscious disregard of Plaintiffs' rights.  Further, National Tobacco performed these acts, or otherwise authorized, ratified or had knowledge of them, and thereby acted in conscious disregard of Plaintiffs' rights.

29.     National Tobacco's conduct as alleged above has damaged and will continue to damage Plaintiffs' goodwill and reputation and has resulted in losses to Plaintiffs and illicit gain of profit to National Tobacco in an amount to be determined at trial.

30.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity pursuant to the common law of California.

31.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity in the form of the unauthorized commercial use of Plaintiffs' name and photograph in violation of California Civil Code §3344.

32.     The aforementioned acts of National Tobacco were willful, oppressive, fraudulent and malicious and therefore, National Tobacco's conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish National Tobacco and to make examples of them to others as provided for in Cal. Civ. Code § 3344(a).

### THIRD CAUSE OF ACTION

Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*)

33.     Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 32, inclusive.

34.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practice as defined by California

Page 7 – PLAINTIFFS' COMPLAINT

Bus. & Prof. Code § 17200 *et seq.*

35.    National Tobacco's violation of federal law (15 U.S.C. § 1125), state law (Cal.

Civ. Code § 3344) and common law, as alleged above in this Complaint, constitute unlawful

business practices.

36.    National Tobacco acts of unfair competition have proximately caused and will

continue to cause Plaintiffs to suffer injury in fact and loss of money in an amount to be

determined at trial.

37.    National Tobacco's acts of unfair competition have also caused and are causing

irreparable and incalculable injury to Plaintiffs' reputation and goodwill.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiffs make a DEMAND FOR JURY TRIAL

and demands judgment in their favor against Defendant as follows:

    (i)    Plaintiffs' general, special and actual damages in a sum to be determined

at trial but in no event less than: $250,000 to Boots Riley and $135,000 to Lifesavas;

    (ii)    Defendant's profits pursuant to 15 U.S.C. § 1117, Cal. Civ. Code § 3344

and Cal. Bus. & Prof. Code § 17200 *et seq.* and alternatively for statutory damages

pursuant to Cal. Civ. Code § 3344;

    (iii)    Judgment for punitive damages in a sum to be determined at trial;

    (iv)    An award to Plaintiffs of their attorneys' fees and costs of suit pursuant to

15 U.S.C. § 1117 and Cal. Civil Code § 3344(a); and

Page 8 – PLAINTIFFS' COMPLAINT

(v)    Such other and further relief as the Court deems just and proper.


DATED:  April 11, 2008

MCNAMER AND COMPANY, PC


By _____
Anthony E. McNamer, CSB #178911
MCNAMER AND COMPANY, PC
519 SW Third Avenue, Suite 601
Portland, Oregon 97204
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs



ANTHONY E. MCNAMER CSB #178911
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

    Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIMOTHY PARKER** and **XAVIER MOSLEY** p.k.a. Blackalicious<br><br>    **PLAINTIFFS,**<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>    **DEFENDANT.** | Case No. C08-01933<br><br>**COMPLAINT FOR:**<br><br>1) **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**<br>2) **MISAPPROPRIATION OF RIGHT OF PUBLICITY (California Common Law and Cal. Civ. Code §3344)**<br>3) **UNFAIR COMPETITION (Cal. Bus. and Prof. Code §17200 *et. seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

For their complaint against Defendant, Plaintiffs allege as follows:

## I.

### JURISDICTION AND VENUE

    1.    This Court has jurisdiction over this action pursuant to 15 U.S.C § 1121 because it

arises under the unfair competition laws of the United States.   The Court also has jurisdiction

pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the

Page 1 – PLAINTIFFS' COMPLAINT



amount in controversy exceeds $75,000.

2.      This Court has personal jurisdiction over the defendants, and venue of this action

is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because this action arises from

the transaction of business in California or, alternatively, out of a tortious act committed in

California or with expected consequences within this state.

## II.

## THE PARTIES

3.      Plaintiffs Timothy Parker and Xavier Mosely reside in Alameda County,

California and are professionally known as the musical group Blackalicious.

4.      Defendant National Tobacco Company, LP ("National Tobacco") is a Delaware

limited partnership doing business at all times within the Alameda County in the State of

California.

## III.

## FACTUAL ALLEGATIONS

5.      Blackalicious is a seminal indie hip hop group.  Blackalicous has always been at

the forefront of the "positive" rap movement.  Their lyrics are often spiritual, introspective and

uplifting rather than violent or misogynistic.

6.      National Tobacco is a large tobacco company.  Through a license, they are the

exclusive United States (and Canada) distributor of Zig-Zag brand rolling papers.

7.      Beginning in April 2006, National Tobacco began an enormous national and

international marketing campaign centered on the website ZigZagLive.com (the "Website").  As

part of this marketing campaign they also sponsored a national music tour entitled Zig-Zag Live

Club Tour (the "Tour"), which began in 2006 and continues to this day.  On information and

Page 2 – PLAINTIFFS' COMPLAINT

belief National Tobacco paid musical artists to sponsor and promote their products. National

Tobacco entered into agreements with sponsored artists granting National Tobacco specific

rights to use sponsored artists' names, likenesses, and biographies on the Website. These

sponsored and endorsing artists were featured prominently on the Website, and the Tour also

featured these sponsored artists along with many other non-sponsored artists. Blackalicious never

played a single date on the Tour, either as a sponsored artist or on a bill with a sponsored artist.

     8.     On information and belief National Tobacco spent millions of dollars on this

ZigZagLive.com marketing campaign and continues to use the Website to promote its products.

Indeed, the ZigZag.com website contains almost no content. The Website, however, contains

substantial content and accounts for nearly all of Zig-Zag's web presence.

     9.     On the Website, the "sponsored" artists are identified by National Tobacco as

"ZIG-ZAG ARTISTS'. Plaintiffs were never sponsored by National Tobacco and never agreed

to endorse National Tobacco's products or to become "ZIG-ZAG ARTISTS".

     10.    On or about June 12, 2006 National Tobacco began using Blackalicious's name,

photograph and biography to promote Zig-Zag brand products on the Website. National

Tobacco continued to use Blackalicious's namejune, photograph and biographies to promote its

products through April 4, 2008. A true and correct copy of the unauthorized Blackalicious

promotional materials used by National Tobacco on the Website, which falsely identifies

Blackalicious as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit A.

     11.    On information and belief National Tobacco paid their sponsored musicians up to

$5000 per sponsored show during such sponsored artists' endorsement of National Tobacco's

products and promotion on the Website.

     12.    During the period of National Tobacco's illegal use of Plaintiffs' names,

Page 3 – PLAINTIFFS' COMPLAINT

photographs and biographies, Blackalicious performed 57 shows. Thus, had Blacklicious

entered into a sponsorship agreement with National Tobacco covering the term of National

Tobacco's unauthorized use of Blacklicious's right of publicity, National Tobacco would have

paid approximately $285,000.

## FIRST CAUSE OF ACTION

False Designation of Origin (15 U.S.C. § 1125 *et seq.*)

13.    Plaintiffs repeat and incorporate by this reference each and every allegation set

forth in paragraphs 1 through 12, inclusive.

14.    National Tobacco's use of Plaintiffs' names, photograph and biographies

constitutes a false designation of origin or description in that it is likely to cause confusion, or to

cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiffs' with

National Tobacco and Plaintiffs' sponsorship, or approval of National Tobacco's goods and

commercial activities. Thus, National Tobacco's activities constitute violations of 15 U.S.C. §

1125(a).

15.    National Tobacco's acts of unfair competition are willful and deliberate and are

made with the intent to reap the benefit of Plaintiffs' names, celebrity, goodwill and reputations.

16.    By reason of National Tobacco's acts of false designation, description and

representation as alleged above, Plaintiffs have suffered, and will continue to suffer, lost revenue

and substantial damage to their reputation and goodwill.

17.    Additionally, National Tobacco has unfairly profited from the acts of false

designation, description and representation as alleged above, in an amount to be determined at

trial.

Page 4 – PLAINTIFFS' COMPLAINT

## SECOND CAUSE OF ACTION

Misappropriation of the Right of Publicity (Common Law and Cal. Civ. Pro. § 3344)

18.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 17, inclusive.

19.    Plaintiffs have an exclusive right of publicity in the use of their names, photographs and biographies.

20.    National Tobacco misappropriated the rights of publicity owned and controlled by Plaintiffs by displaying Plaintiffs' names, photographs and biographies for National Tobacco's commercial gain without authorization.

21.    As a direct and proximate result of National Tobacco's conduct as aforesaid, Plaintiffs have been damaged by lost income in an amount to be determined at trial, but in no event less than $285,000.

22.    National Tobacco acted deliberately to injure Plaintiffs and otherwise in conscious disregard of Plaintiffs' rights.  Further, National Tobacco performed these acts, or otherwise authorized, ratified or had knowledge of them, and thereby acted in conscious disregard of Plaintiffs' rights.

23.    National Tobacco's conduct as alleged above has damaged and will continue to damage Plaintiffs' goodwill and reputation and has resulted in losses to Plaintiffs and illicit gain of profit to National Tobacco in an amount to be determined at trial.

24.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity pursuant to the common law of California.

25.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity in the form of the unauthorized commercial

Page 5 – PLAINTIFFS' COMPLAINT

use of Plaintiffs' name and photograph in violation of California Civil Code §3344.

26.     The aforementioned acts of National Tobacco were willful, oppressive, fraudulent and malicious and therefore, National Tobacco's conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish National Tobacco and to make examples of them to others as provided for in Cal. Civ. Code § 3344(a).

### THIRD CAUSE OF ACTION

Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*)

27.     Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 26, inclusive.

28.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practice as defined by California Bus. & Prof. Code § 17200 *et seq.*

29.     National Tobacco's violation of federal law (15 U.S.C. § 1125), state law (Cal. Civ. Code § 3344) and common law, as alleged above in this Complaint, constitute unlawful business practices.

30.     National Tobacco acts of unfair competition have proximately caused and will continue to cause Plaintiffs to suffer injury in fact and loss of money in an amount to be determined at trial.

31.     National Tobacco's acts of unfair competition also have caused and are causing irreparable and incalculable injury to Plaintiffs' reputation and goodwill.

### PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiffs make a DEMAND FOR JURY TRIAL and demands judgment in their favor against Defendant as follows:

Page 6 – PLAINTIFFS' COMPLAINT

(i)     Plaintiffs' general, special and actual damages in a sum to be determined at trial but in no event less than $285,000;

(ii)    Defendant's profits pursuant to 15 U.S.C. § 1125, Cal. Civ. Code § 3344 and Cal. Bus. & Prof. Code § 17200 *et seq.* and alternatively for statutory damages pursuant to Cal. Civ. Code § 3344;

(iii)    Judgment for punitive damages in a sum to be determined at trial;

(iv)    An award to Plaintiffs of their attorneys' fees and costs of suit pursuant to Cal. Civil Code § 3344(a); and

(v)    Such other and further relief as the Court deems just and proper.


DATED:  April 11, 2008

MCNAMER AND COMPANY, PC

By _____

Anthony E. McNamer, CSB #178911
MCNAMER AND COMPANY, PC
519 SW Third Avenue, Suite 601
Portland, Oregon 97204
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs


Page 7 – PLAINTIFFS' COMPLAINT

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **National Tobacco Company, LP** | Case No. CV. 04-1443-JE |
| **Plaintiff,** | |
| v. | **DECLARATION SOLOMON DAVID IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND FORUM NON CONVENIENS** |
| **Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving p.k.a. Lifesavas,** | |
| **Defendants.** | |

SOLOMON DAVID declares and states as follows:

1.      I am a member of the musical group Lifesavas.    Marlon Irving is the other member of the group.

2.      I am an individual and I reside in Portland, Oregon.

3.      It was recently discovered that, since October 25, 2007, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig Zag branded products.   National Tobacco featured us on their website as "Zig Zag Artists."   National Tobacco had no license or authority to use our names, likeness and biography and therefore violated our right of publicity.

4.      On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd.,



EXHIBIT

5

Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate for their unlawful use of our names, likeness and biography to promote their products.

4.    National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.   I was not served until April 21, 2008.

5.    On April 11, 2008 a substantive lawsuit was filed by me, Marlon Irving and Raymond Riley against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01931, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.   National Tobacco was served on April 14, 2008 – seven days prior to my service in this matter.

6.    Other than the occasional performance in New York, I have no contacts with New York.   I do not reside there.   All of the defendants in this action reside in either Oakland, California or Portland, Oregon.   I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon.  We are all individuals, trying to make a living as musical artists.  It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York.  This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.    It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California.  National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I

understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 28, 2008 in Oakland, California

Solomon David                    5.28.08

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **National Tobacco Company, LP** | Case No. CV. 04-1443-JE |
| **Plaintiff,** | |
| v. | **DECLARATION MARLON IRVING IN** |
| **Timothy Parker and Xavier Mosley p.k.a.** | **SUPPORT OF MOTION TO DISMISS** |
| **Blackalicious, Raymond Riley p.k.a. Boots** | **FOR IMPROPER VENUE AND** |
| **Riley, Solomon David and Marlon Irving** | **FORUM NON CONVENIENS** |
| **p.k.a. Lifesavas,** | |
| **Defendants**. | |

MARLON IRVING declares and states as follows:

    1.      I am a member of the musical group Lifesavas.   Solomon David is the other

member of the group.

    2.      I am an individual and I reside in Portland, Oregon.

    3.      It was recently discovered that, since October 25, 2007, National Tobacco

Company LP ("National Tobacco") has been using our names, likeness and biography to

promote its products, specifically its Zig Zag branded products.  National Tobacco featured us on

their website as "Zig Zag Artists."   National Tobacco had no license or authority to use our

names, likeness and biography and therefore violated our right of publicity.

    4.      On March 28, 2008 we sent a letter from our California attorney, Anthony

McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd.,



Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate for their unlawful use of our names, likeness and biography to promote their products.

4.      National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.   I was not served until April 24, 2008.

5.      On April 11, 2008 a substantive lawsuit was filed by me, Solomon David and Raymond Riley against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01931, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.   National Tobacco was served on April 14, 2008 – ten days prior to my service in this matter.

6.      Other than the occasional performance in New York, I have no contacts with New York.   I do not reside there.   All of the defendants in this action reside in either Oakland, California or Portland, Oregon.   I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon.   We are all individuals, trying to make a living as musical artists.   It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York.   This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.      It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California.   National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I

Page 2 – DECLARATION OF MARLON IRVING IN SUPPORT OF MOTION TO DISMISS

understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 28, 2008 in Portland, Oregon

Marlon Irving

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **National Tobacco Company, LP** | Case No. CV. 04-1443-JE |
| **Plaintiff,** | |
| v. | **DECLARATION XAVIER MOSLEY IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND FORUM NON CONVENIENS** |
| **Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving p.k.a. Lifesavas,** | |
| **Defendants.** | |

XAVIER MOSLEY declares and states as follows:

1.     I am a member of the musical group Blackalicious.   Timothy Parker is the other member of the group.

2.     I am an individual and I reside in Oakland, California.

3.     It was recently discovered that, since June 12, 2006, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig Zag branded products.  For nearly two years National Tobacco featured us on their website as "Zig Zag Artists."   National Tobacco had no license or authority to use our names, likeness and biography and therefore violated our right of publicity.

4.     On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd.,



Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate us for the nearly two years in which they have been unlawfully using our names, likeness and biography to promote their products.

4.      National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008. I was never personally served in this matter, but my New York counsel agreed to accept service on my behalf on May 7, 2008.

5.      On April 11, 2008 a substantive lawsuit was filed by Timothy Parker and myself against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01933, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition. National Tobacco was served on April 14, 2008 – over three weeks prior to my service in this matter.

6.      Other than the occasional performance in New York, I have no contacts with New York. I do not reside there. All of the defendants in this action reside in either Oakland, California or Portland, Oregon. I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon. We are all individuals, trying to make a living as musical artists. It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York. This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.      It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California. National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

Page 2 – DECLARATION OF XAVIER MOSELY IN SUPPORT OF MOTION TO DISMISS

I hereby declare that the above statement is true to the best of my knowledge and belief and that I understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 28, 2008 in Oakland, California



Xavier Mosley

Page 3 – DECLARATION OF XAVIER MOSELY IN SUPPORT OF MOTION TO DISMISS

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **National Tobacco Company, LP** | Case No. CV. 04-1443-JE |
| **Plaintiff,** | |
| v. | **DECLARATION TIMOTHY PARKER** |
| **Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving p.k.a. Lifesavas,** | **IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND FORUM NON CONVENIENS** |
| **Defendants.** | |

TIMOTHY PARKER declares and states as follows:

1.    I am a member of the musical group Blackalicious.    Xavier Mosley is the other member of the group.

2.    I am an individual and I reside in Oakland, California.

3.    It was recently discovered that, since June 12, 2006, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig Zag branded products.  For nearly two years National Tobacco featured us on their website as "Zig Zag Artists."   National Tobacco had no license or authority to use our names, likeness and biography and therefore violated our right of publicity.

4.    On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd.,

Page 1 – DECLARATION OF TIMOTHY PARKER IN SUPPORT OF MOTION TO DISMISS



Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate us for the nearly two years in which they have been unlawfully using our names, likeness and biography to promote their products.

4.      National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.   I was not served until April 18, 2008 at 7:22 p.m (after business hours)

5.      On April 11, 2008 a substantive lawsuit was filed by Xavier Mosley and myself against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01933, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.   National Tobacco was served on April 14, 2008 – four days prior to my service in this matter.

6.      Other than the occasional performance in New York, I have no contacts with New York.   I do not reside there.   All of the defendants in this action reside in either Oakland, California or Portland, Oregon.   I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon.   We are all individuals, trying to make a living as musical artists.   It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York.   This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.      It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California.   National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I

Page 2 – DECLARATION OF TIMOTHY PARKER IN SUPPORT OF MOTION TO DISMISS

PAGE 4/4 * RCVD AT 5/29/2008 5:10:23 PM [Central Daylight Time] * SVR:CHRFAXO2/0 * DNIS:3000 * CSID:510 465 8889 * DURATION (mm-ss):01-10

May 29 08 02:21p

understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 29, 2008 in Oakland, California

_____
Timothy Parker

Page 3 – DECLARATION OF TIMOTHY PARKER IN SUPPORT OF MOTION TO DISMISS

05/29/2008 15:13 FAX 510 465 8889          FEDEX KINKOS          ☒ 004/004

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **National Tobacco Company, LP** | Case No. CV. 04-1443-JE |
| **Plaintiff,** |  |
| v. | **DECLARATION RAYMOND RILEY IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND FORUM NON CONVENIENS** |
| **Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving p.k.a. Lifesavas,** |  |
| **Defendants.** |  |

RAYMOND RILEY declares and states as follows:

1.     I am a musical artist professionally known as Boots Riley.

2.     I am an individual and I reside in Oakland, California.

3.     It was recently discovered that, since October 17, 2007, National Tobacco Company LP ("National Tobacco") has been using my name, likeness and biography to promote its products, specifically its Zig Zag branded products. National Tobacco featured me on their website as a "Zig Zag Artist." National Tobacco had no license or authority to use my name, likeness and biography and therefore violated my right of publicity.

4.     On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd., Louisville, KY 40212-2238, demanding that they cease their violation of our right of



publicity and compensate me for their unlawful use of my name, likeness and biography to promote their products.

4.      National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.  I was not served until April 19, 2008.

5.      On April 11, 2008 a substantive lawsuit was filed by me and the member of the musical group Lifesavas (Solomon David and Marlon Irving) against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01931, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.  National Tobacco was served on April 14, 2008 - five days prior to my service in this matter.

6.      Other than the occasional performance in New York, I have no contacts with New York.  I do not reside there.  All of the defendants in this action reside in either Oakland, California or Portland, Oregon.  I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon. We are all individuals, trying to make a living as musical artists.  It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York.  This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.      It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California. National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I

understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 28, 2008 in Oakland, California

Raymond Riley

**Page page3 – DECLARATION OF RAYMOND RILEY IN SUPPORT OF MOTION TO DISMISS**