UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _____ | X | ECF Case |
| NATIONAL TOBACCO COMPANY, L.P. | : | |
| | : | 08-CV-03383(SAS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY PARKER and XAVIER | : | **DECLARATION OF** |
| MOSLEY, p.k.a. BLACKALICIOUS, | : | **RUSSELL J. CHIBE** |
| RAYMOND RILEY p.k.a. BOOTS RILEY, | : | **IN SUPPORT OF** |
| SOLOMON DAVID and MARLON IRVING, | : | **MOTION TO DISMISS** |
| p.k.a.LIFESAVAS, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| _____ | X | |

RUSSELL J. CHIBE declares, pursuant to 28 U.S.C. §1746, the following to be true under penalties of perjury:

1.  I am an associate with the firm of Drinker Biddle & Reath LLP, the attorneys for defendants Timothy Parker, Xavier Mosley, Raymond Riley, Solomon David and Marlon Irving (collectively "Defendants").

2.  I am fully familiar with the facts set forth in this declaration.

3.  Attached hereto as Exhibit 1 is a copy of a letter sent by Defendants' California and Oregon counsel, Anthony McNamer ("McNamer"), to Plaintiff on March 28, 2008 demanding that it cease its violation of their right of publicity and compensate each of the Defendants for the period during which it had been unlawfully using their names, likenesses and biographies to promote Plaintiff's products.

4. Attached hereto as Exhibit 2 is a letter from McNamer to Plaintiff on April 11, 2008 in response to Plaintiff's filing of the immediate matter in the Southern District of New York.

5. Attached hereto as Exhibit 3 is a copy of the Complaint filed by Defendants Raymond Riley, Solomon David and Marlon Irving against Plaintiff in the Northern District of California on April 11, 2008.

6. Attached hereto as Exhibit 4 is a copy of the Complaint filed by Defendants Timothy Parker and Xavier Mosley against Plaintiff in the Northern District of California on April 11, 2008.

7. Attached hereto as Exhibit 5 is a Declaration of Defendant Solomon David in Support of Defendants' Motion to Dismiss, dated May 28, 2008.

8. Attached hereto as Exhibit 6 is a Declaration of Defendant Marlon Irving in Support of Defendants' Motion to Dismiss, dated May 28, 2008.

9. Attached hereto as Exhibit 7 is a Declaration of Defendant Xavier Mosley in Support of Defendants' Motion to Dismiss, dated May 28, 2008.

10. Attached hereto as Exhibit 8 is a Declaration of Defendant Timothy Parker in Support of Defendants' Motion to Dismiss, dated May 28, 2008.

11. Attached hereto as Exhibit 9 is a Declaration of Defendant Raymond Riley in Support of Defendants' Motion to Dismiss, dated May 28, 2008.

12. I hereby certify that, prior to the filing of this motion, parties have exchanged letters pursuant to Rule III(B) of Judge Scheindlin's Individual Rules and Procedures.

DATED:  Chicago, Illinois
           May 30, 2008

DRINKER BIDDLE & REATH LLP


By: _____

         Russell J. Chibe
         191 North Wacker Drive
         Suite 3700
         Chicago, IL 60606
         (312) 569-1000

*Attorneys for Defendants Timothy Parker,*
*Xavier Mosley, Raymond Riley, Solomon*
*David, and Marlon Irving*

- 3 -

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 30, 2008, I caused a true and

correct copy of the foregoing Declaration of Russell J. Chibe in Support of Motion To Dismiss to

be electronically filed with the Clerk of the District Court using the CM/ECF system, which sent

notification of such filing to the following to all counsel for Plaintiff and Defendants as listed

below:

| | |
|---|---|
| Marcella Ballard<br>Baker & McKenzie LLP<br>1114 Avenue of the Americas<br>New York, NY 10009 | **Attorneys for Plaintiff** |
| Anthony E. McNamer, Esq.<br>McNamer and Company<br>519 SW Third Ave., Suite 601<br>Portland, Oregon 97204 | **Attorneys for Defendant Timothy Parker and Xavier Mosley, p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving, p.k.a. Lifesavas** |

Dated: May 30, 2008

s/David B. Sudzus
David B. Sudzus

- 4 -



# MCNAMER AND COMPANY

Intellectual Property • Entertainment • Sports • Litigation • Corporate

*Portland*
*Los Angeles*

**Anthony McNamer**
503.727.2504
anthony@mcnamerlaw.com

March 28, 2008

CONFIDENTIAL SETTLEMENT COMMUNICATION

VIA FACSIMILE (502-774-9262)

National Tobacco Company, LP
General Counsel
3029 W Muhammad Ali Blvd.
Louisville, KY 40212-2238

Re: Lanham Act and Right of Publicity Violations

This firm represents the musical group consisting of Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley and the musical group consisting of Solomon David and Marlon Irving p.k.a. Lifesavas.  It has come to our attention that since June 12, 2006, October 17, 2007 and October 25, 2007 respectively, you have been using my clients' names, likeness and biographies to promote Zig-Zag brand products on the ZigZagLive.com website (the "Website").  Your unlicensed and illegal use of my clients' names, likeness, and biographies constitutes violations 15 U.S.C. § 1125(a)(1)(A) and various state right of publicity laws, including California Civil Code §3344 and the common law of Oregon.  My clients are particularly damaged by this use because they would never license use of their names, likeness and biographies to promote tobacco products.  My clients' music does not promote smoking and they are appalled that their fans now perceive them to be profiting from the sale of tobacco products.  Your persistent illegal acts have made it appear to these fans that they have "sold out" to a tobacco company.  In addition to all parties' unwillingness to promote tobacco products, Boots Riley's music presents a decidedly anti-corporate message.   Obviously, his apparent sponsorship by a tobacco company flies directly in the face of the message he has spread throughout his career.

Thus, while under normal circumstances my clients' actual damages would likely be a reasonable licensing fee, under the present circumstances there is no licensing fee that my clients would find reasonable.  However, since monetary damages (and your immediate removal of my clients' names, likeness and biographies) are what we must work with, we have investigated what a standard licensing fee would be.

We are informed that if your company had sponsored my clients' live performances (which is what your company is doing in relation to many of the sponsored acts), you would pay between $3000 and $5000 per show.  During the period of your illegal use, Blackalicious performed 57 shows, Boots Riley performed 50 shows and Lifesavas performed 27 shows.  Thus, ignoring the fact that a license fee would be impossible to negotiate, you would have paid Blackalicious between $171,000 and $285,000, Boots



Riley between $150,000 and $250,000 and Lifesavas between $81,000 and $135,000. Also, with the sizable amount of cross marketing you've done (*e.g.* through sonicbids.com and CMJ) in relation to this campaign, it would not surprise me if the Website has been viewed several millions of times – thus resulting in far greater publicity than show sponsorships would ever garner.

Though my clients are entitled $285,000, $250,000 and $135,000 respectfully, and additionally are entitled to exemplary damages and their attorneys fees and costs, Blackalicious will settle their claims for $171,000, Boots Riley will settle his claims for the payment of $150,000 and Lifesavas will settle their claims for $81,000. Further, you must immediately cease all use of their names, likeness and biographies, including all such use on the Website.

Our offer will remain open until April 4, 2008. If we have not settled this matter by then, my clients will have no choice but to issue public statements decrying the unauthorized use of their names, likeness and biographies by a tobacco company so as to mitigate any further damage to their reputation. My clients will also file suit in California and Oregon (I am licensed in both states). It obviously would be best for all parties to quickly and confidentially settle this matter. I sincerely hope that is possible under the terms set forth above.

I look forward to your prompt response.


Very truly yours,

McNamer and Company



Anthony McNamer



# MCNAMER AND COMPANY

---

Intellectual Property • Entertainment • Sports • Litigation • Corporate          *Portland*
*Los Angeles*

**Anthony McNamer**
503.727.2504
anthony@mcnamerlaw.com

April 11, 2008

VIA ELECTRONIC MAIL (Marcella.ballard@bakernet.com)

CONFIDENTIAL SETTLEMENT COMMUNICATION

Marcella Ballard
Baker & McKenzie LLP
1114 Avenue of Americas
New York, NY 10036

Re: Blackalicious et al v. National Tobacco Company LP

Included with this letter you will find the electronic versions of the complaints that were filed today in the Northern District of California, Oakland Division and served on your client through its registered agent CT Corporation System. I have not yet received my conformed copy, so I don't yet have the case numbers.

While my clients have filed and served their complaint, and are prepared to pursue this matter through trial, they thought they would make one final attempt at settlement prior to the press releases going out on Wednesday. Blackalicious is willing to settle their claims for the payment of $100,000 ($50,000 each). As you will note in their Complaint, they did not ever play a single show on the Zig-Zag tour. The photo used by your client is actually from the Bonnaroo Music Festival. So your client's absurd "defense" regarding Galactic is not even arguably applicable to Blackalicious. Moreover, your client used Blackalicious's name, photo and biography for nearly two years. Boots Riley is willing to settle his claims for $40,000. And Lifesavas are willing to settle their claims for $60,000 ($30,000 each). This is our final settlement offer. It's half of the previous offer, and represents a significant concession on my clients' part. Your client has until EOD Tuesday to accept this offer. After that we will simply move forward with the lawsuit.

As to your client's lawsuit in SDNY, as I told you, I am not a New York lawyer. I have no authority to accept service on my clients' behalf for a New York lawsuit. My clients are in the process of securing local counsel, but I cannot guarantee when that will happen. As such, if you are in a hurry to serve my clients I would suggest you personally serve them.

On a related note, I'm sure you are fully aware that SDNY is the improper forum. That case will obviously be removed. Might I suggest you simply dismiss that case and defend the substantive actions filed today in Oakland. Further, a significant part of the relief requested is a prior restraint, which the Court cannot possibly grant. Additionally, your inclusion of confidential settlement communications in



519 SW Third Avenue, Suite 601 • Portland, Oregon 97204 • main: 503.727.2500 • fax: 503.727.2501 • www.mcnam...

a pleading is improper and unethical. That is an issue that will obviously need to be addressed by my clients' New York counsel, but I just wanted you to apprise you of the issue.

I look forward to your prompt response to our imminently reasonable offer, and hope this matter is settled before your client spends significant sums prosecuting these three cases.

Very truly yours,

McNamer and Company

/Anthony McNamer/

Anthony McNamer



**ANTHONY E. MCNAMER CSB #178911**
Anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RAYMOND RILEY**  p.k.a. Boots Riley, **SOLOMON DAVID** and **MARLON IRVING** p.k.a. Lifesavas<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**NATIONAL TOBACCO COMPANY, LP**<br><br>**DEFENDANT.** | Case No. C08-01931<br><br>**COMPLAINT FOR:**<br><br>1) **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**<br>2) **MISAPPROPRIATION OF RIGHT OF PUBLICITY (California Common Law and Cal. Civ. Code §3344)**<br>3) **UNFAIR COMPETITION (Cal. Bus. and Prof. Code §17200 *et. seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

For their complaint against Defendant, Plaintiffs allege as follows:

**I.**

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this action pursuant to 15 U.S.C § 1121 because it

arises under the unfair competition laws of the United States.   The Court also has jurisdiction

pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the

Page 1 – PLAINTIFFS' COMPLAINT



amount in controversy exceeds $75,000.

2.    This Court has personal jurisdiction over the defendants, and venue of this action

is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because this action arises from

the transaction of business in California or, alternatively, out of a tortious act committed in

California or with expected consequences within this state.

## II.

## THE PARTIES

3.    Plaintiff Raymond Riley is a resident of Alameda County, California and is

professionally known as Boots Riley.

4.    Plaintiff Solomon David is a resident of Alameda County, California and Plaintiff

Marlon Irving is a resident of Portland, Oregon, and they are professionally known as the

musical group Lifesavas

5.    Defendant National Tobacco Company, LP ("National Tobacco") is a Delaware

limited partnership doing business at all times within the Alameda County in the State of

California.

## III.

## FACTUAL ALLEGATIONS

6.    Boots Riley is a musical artist and a co-founder of the musical group The Coup.

Boots Riley was raised amidst political action in Oakland, California, where, since the age of

fifteen, he's been involved in organizing and inspiring youth.  From student organizing in

Oakland's public schools, to serving on the central committee for the Progressive Labor Party, to

holding the presidential position for InCAR (International Committee Against Racism), and

organizing to build California's Anti-Racist Farm Workers' Union, Boots Riley has been an

Page 2 – PLAINTIFFS' COMPLAINT

integral part of a progressive struggle for positive change through culture and has used his music as a medium to promote that change. Boots Riley's music and image presents a decidedly anti-corporate message.

7.     Lifesavas are part of the positive hiphop movement. They are a musical group who have built their career addressing such issues as politics, family, social justice, drug abuse, religion and racial progress. Their music is conscientious and their image has always been about motivating kids and adults to stay drug and alcohol free. Their music also encourages their fans to be aware of the problems associated with such abuses.

8.     National Tobacco is a large tobacco company. Through a license, they are the exclusive United States (and Canada) distributor of Zig-Zag brand rolling papers.

9.     Beginning in April 2006, National Tobacco began an enormous national and international marketing campaign centered on the website ZigZagLive.com (the "Website"). As part of this marketing campaign they also sponsored a national music tour entitled Zig-Zag Live Club Tour (the "Tour"), which began in 2006 and continues to this day. On information and belief, National Tobacco paid musical artists to sponsor and promote their products. National Tobacco entered into agreements with sponsored artists granting National Tobacco specific rights to use sponsored artists' names, likenesses, and biographies on the Website. These sponsored and endorsing artists were featured prominently on the Website, and the Tour also featured these sponsored artists along with other non-sponsored artists.

10.     On information and belief National Tobacco spent millions of dollars on this ZigZagLive.com marketing campaign and continues to use the Website to promote its products. Indeed, the ZigZag.com website contains almost no content. The Website, however, contains substantial content and accounts for nearly all of Zig-Zag's web presence and branding.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

11.     On the Website, the "sponsored" artists are identified by National Tobacco as "ZIG-ZAG ARTISTS'.  Plaintiffs were never sponsored by National Tobacco and never agreed to endorse National Tobacco's products or to become "ZIG-ZAG ARTISTS".

12.     National Tobacco's products effectively represent a corporate ideology that puts profits above the public's health and well-being.  Plaintiffs have never endorsed tobacco products, and would never endorse tobacco products.

13.     On or about October 17, 2007, National Tobacco began using Boots Riley's names, photograph and biography to promote Zig-Zag brand products on the Website.  National Tobacco continued to use Boots Riley's name, photograph and biography to promote its products through April 4, 2008.  A true and correct copy of the unauthorized Boots Riley promotional materials used by National Tobacco on the Website, which false identifies Boots Riley as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit A.

14.     On or about October 25, 2007, National Tobacco began using Lifesavas' name, photograph and biographies to promote Zig-Zag brand products on the Website.  National Tobacco continued to use Lifesavas' name, photograph and biographies to promote its products through April 4, 2008.  A true and correct copy of the unauthorized Lifesavas promotional materials used by National Tobacco on the Website, which falsely identify Lifesavas as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit B.

15.     Given the message Plaintiffs have spread throughout their careers, the use of Plaintiffs' names, photographs and biographies to promote Big Tobacco's products and agenda is particularly damaging.  Plaintiffs would never license use of their names, photographs and biographies to promote tobacco products.  Lifesavas, for example, share the same view as the National Association of African-Americans for Positive Imagery, who has shown that the

Page 4 – PLAINTIFFS' COMPLAINT

African-American community has been exploited by tobacco companies. Indeed, significant research confirms that tobacco companies have specifically targeted the African-American community.

16.    Such apparent affiliation with, and sponsorship of, National Tobacco and its products has severely damaged Plaintiffs' reputation, as their fans now perceive Plaintiffs to be profiting from the sale of tobacco products.

17.    On information and belief, National Tobacco paid their sponsored musicians up to $5,000 per sponsored show during such sponsored artists' endorsement of National Tobacco's products and promotion on the Website.

18.    During the period of National Tobacco's illegal use of Plaintiffs' names, photographs and biographies, Boots Riley performed 50 shows and Lifesavas performed 27 shows.  Thus, had Boots Riley entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Boots Riley's right of publicity, National Tobacco would have paid approximately $250,000.  Had Lifesavas entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Lifesavas's right of publicity, National Tobacco would have paid approximately $135,000.

## FIRST CAUSE OF ACTION

False Designation of Origin (15 U.S.C. § 1125 *et seq.*)

19.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 18, inclusive.

20.    National Tobacco's use of Plaintiffs' names, photograph and biographies constitutes a false designation of origin or description in that it is likely to cause confusion, or to

Page 5 – PLAINTIFFS' COMPLAINT

cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiffs' with

National Tobacco, and Plaintiffs' sponsorship or approval of National Tobacco's goods and

commercial activities. Thus, National Tobacco's activities constitute violations of 15 U.S.C. §

1125(a).

21.    National Tobacco's acts of unfair competition are willful and deliberate and are

made with the intent to reap the benefit of Plaintiffs' names, celebrity, goodwill and reputations.

22.    By reason of National Tobacco's acts of false designation, description and

representation as alleged above, Plaintiffs have suffered, and will continue to suffer, lost revenue

and substantial damage to their reputation and goodwill.

23.    Additionally, National Tobacco has unfairly profited from the acts of false

designation, description and representation as alleged above, in an amount to be determined at

trial.

## SECOND CAUSE OF ACTION

Misappropriation of the Right of Publicity (Common Law and Cal. Civ. Pro. § 3344)

24.    Plaintiffs repeat and incorporate by this reference each and every allegation set

forth in paragraphs 1 through 23, inclusive.

25.    Plaintiffs have an exclusive right of publicity in the use of their names,

photographs and biographies.

26.    National Tobacco misappropriated the rights of publicity owned and controlled by

Plaintiffs by displaying Plaintiffs' names, photographs and biographies for National Tobacco's

commercial gain without authorization.

27.    As a direct and proximate result of National Tobacco's conduct as aforesaid,

Plaintiffs have been damaged by lost income in an amount to be determined at trial, but in no

Page 6 – PLAINTIFFS' COMPLAINT

event less than $250,000 for Boots Riley and $135,000 for Lifesavas.

28.    National Tobacco acted deliberately to injure Plaintiffs and otherwise in conscious disregard of Plaintiffs' rights. Further, National Tobacco performed these acts, or otherwise authorized, ratified or had knowledge of them, and thereby acted in conscious disregard of Plaintiffs' rights.

29.    National Tobacco's conduct as alleged above has damaged and will continue to damage Plaintiffs' goodwill and reputation and has resulted in losses to Plaintiffs and illicit gain of profit to National Tobacco in an amount to be determined at trial.

30.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity pursuant to the common law of California.

31.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity in the form of the unauthorized commercial use of Plaintiffs' name and photograph in violation of California Civil Code §3344.

32.    The aforementioned acts of National Tobacco were willful, oppressive, fraudulent and malicious and therefore, National Tobacco's conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish National Tobacco and to make examples of them to others as provided for in Cal. Civ. Code § 3344(a).

## THIRD CAUSE OF ACTION

Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*)

33.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 32, inclusive.

34.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practice as defined by California

Page 7 – PLAINTIFFS' COMPLAINT

Bus. & Prof. Code § 17200 *et seq.*

35.    National Tobacco's violation of federal law (15 U.S.C. § 1125), state law (Cal.

Civ. Code § 3344) and common law, as alleged above in this Complaint, constitute unlawful

business practices.

36.    National Tobacco acts of unfair competition have proximately caused and will

continue to cause Plaintiffs to suffer injury in fact and loss of money in an amount to be

determined at trial.

37.    National Tobacco's acts of unfair competition have also caused and are causing

irreparable and incalculable injury to Plaintiffs' reputation and goodwill.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiffs make a DEMAND FOR JURY TRIAL

and demands judgment in their favor against Defendant as follows:

     (i)    Plaintiffs' general, special and actual damages in a sum to be determined

at trial but in no event less than: $250,000 to Boots Riley and $135,000 to Lifesavas;

     (ii)    Defendant's profits pursuant to 15 U.S.C. § 1117, Cal. Civ. Code § 3344

and Cal. Bus. & Prof. Code § 17200 *et seq.* and alternatively for statutory damages

pursuant to Cal. Civ. Code § 3344;

     (iii)    Judgment for punitive damages in a sum to be determined at trial;

     (iv)    An award to Plaintiffs of their attorneys' fees and costs of suit pursuant to

15 U.S.C. § 1117 and Cal. Civil Code § 3344(a); and

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

     (v)    Such other and further relief as the Court deems just and proper.

DATED:  April 11, 2008

                           **MCNAMER AND COMPANY, PC**

                         By _____

                           **Anthony E. McNamer, CSB #178911**
                           **MCNAMER AND COMPANY, PC**
                           519 SW Third Avenue, Suite 601
                           Portland, Oregon 97204
                           Telephone: (503) 727-2500
                           Facsimile: (503) 727-2501

                              Attorneys for Plaintiffs

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500



ANTHONY E. MCNAMER CSB #178911
anthony@mcnamerlaw.com
MCNAMER AND COMPANY P.C.
519 S.W. Third Avenue, Suite 601
Portland, Oregon  97204-2534
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY PARKER and XAVIER MOSLEY p.k.a. Blackalicious<br><br>PLAINTIFFS,<br><br>v.<br><br>NATIONAL TOBACCO COMPANY, LP<br><br>DEFENDANT. | Case No.  C08-01933<br><br>**COMPLAINT FOR:**<br><br>1) **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**<br>2) **MISAPPROPRIATION OF RIGHT OF PUBLICITY (California Common Law and Cal. Civ. Code §3344)**<br>3) **UNFAIR COMPETITION (Cal. Bus. and Prof. Code §17200 et. seq.)**<br><br>**DEMAND FOR JURY TRIAL** |

For their complaint against Defendant, Plaintiffs allege as follows:

**I.**

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this action pursuant to 15 U.S.C § 1121 because it

arises under the unfair competition laws of the United States.   The Court also has jurisdiction

pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the

Page 1 – PLAINTIFFS' COMPLAINT



EXHIBIT
4

amount in controversy exceeds $75,000.

2.    This Court has personal jurisdiction over the defendants, and venue of this action

is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because this action arises from

the transaction of business in California or, alternatively, out of a tortious act committed in

California or with expected consequences within this state.

## II.

## THE PARTIES

3.    Plaintiffs Timothy Parker and Xavier Mosely reside in Alameda County,

California and are professionally known as the musical group Blackalicious.

4.    Defendant National Tobacco Company, LP ("National Tobacco") is a Delaware

limited partnership doing business at all times within the Alameda County in the State of

California.

## III.

## FACTUAL ALLEGATIONS

5.    Blackalicious is a seminal indie hip hop group.  Blackalicous has always been at

the forefront of the "positive" rap movement.  Their lyrics are often spiritual, introspective and

uplifting rather than violent or misogynistic.

6.    National Tobacco is a large tobacco company.  Through a license, they are the

exclusive United States (and Canada) distributor of Zig-Zag brand rolling papers.

7.    Beginning in April 2006, National Tobacco began an enormous national and

international marketing campaign centered on the website ZigZagLive.com (the "Website").  As

part of this marketing campaign they also sponsored a national music tour entitled Zig-Zag Live

Club Tour (the "Tour"), which began in 2006 and continues to this day.  On information and

Page 2 – PLAINTIFFS' COMPLAINT

belief National Tobacco paid musical artists to sponsor and promote their products. National Tobacco entered into agreements with sponsored artists granting National Tobacco specific rights to use sponsored artists' names, likenesses, and biographies on the Website. These sponsored and endorsing artists were featured prominently on the Website, and the Tour also featured these sponsored artists along with many other non-sponsored artists. Blackalicious never played a single date on the Tour, either as a sponsored artist or on a bill with a sponsored artist.

8.    On information and belief National Tobacco spent millions of dollars on this ZigZagLive.com marketing campaign and continues to use the Website to promote its products. Indeed, the ZigZag.com website contains almost no content. The Website, however, contains substantial content and accounts for nearly all of Zig-Zag's web presence.

9.    On the Website, the "sponsored" artists are identified by National Tobacco as "ZIG-ZAG ARTISTS'. Plaintiffs were never sponsored by National Tobacco and never agreed to endorse National Tobacco's products or to become "ZIG-ZAG ARTISTS".

10.    On or about June 12, 2006 National Tobacco began using Blackalicious's name, photograph and biography to promote Zig-Zag brand products on the Website. National Tobacco continued to use Blackalicious's namejune, photograph and biographies to promote its products through April 4, 2008. A true and correct copy of the unauthorized Blackalicious promotional materials used by National Tobacco on the Website, which falsely identifies Blackalicious as a "ZIG-ZAG ARTIST", is attached hereto as Exhibit A.

11.    On information and belief National Tobacco paid their sponsored musicians up to $5000 per sponsored show during such sponsored artists' endorsement of National Tobacco's products and promotion on the Website.

12.    During the period of National Tobacco's illegal use of Plaintiffs' names,

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon 97204 · (503) 727-2500

photographs and biographies, Blackalicious performed 57 shows. Thus, had Blacklicious entered into a sponsorship agreement with National Tobacco covering the term of National Tobacco's unauthorized use of Blacklicious's right of publicity, National Tobacco would have paid approximately $285,000.

### FIRST CAUSE OF ACTION

False Designation of Origin (15 U.S.C. § 1125 *et seq.*)

13.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 12, inclusive.

14.    National Tobacco's use of Plaintiffs' names, photograph and biographies constitutes a false designation of origin or description in that it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiffs' with National Tobacco and Plaintiffs' sponsorship, or approval of National Tobacco's goods and commercial activities. Thus, National Tobacco's activities constitute violations of 15 U.S.C. § 1125(a).

15.    National Tobacco's acts of unfair competition are willful and deliberate and are made with the intent to reap the benefit of Plaintiffs' names, celebrity, goodwill and reputations.

16.    By reason of National Tobacco's acts of false designation, description and representation as alleged above, Plaintiffs have suffered, and will continue to suffer, lost revenue and substantial damage to their reputation and goodwill.

17.    Additionally, National Tobacco has unfairly profited from the acts of false designation, description and representation as alleged above, in an amount to be determined at trial.

MCNAMER AND COMPANY PC
519 S.W. Third Avenue · Suite 601
Portland, Oregon  97204 · (503) 727-2500

**SECOND CAUSE OF ACTION**

Misappropriation of the Right of Publicity (Common Law and Cal. Civ. Pro. § 3344)

18.    Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 17, inclusive.

19.    Plaintiffs have an exclusive right of publicity in the use of their names, photographs and biographies.

20.    National Tobacco misappropriated the rights of publicity owned and controlled by Plaintiffs by displaying Plaintiffs' names, photographs and biographies for National Tobacco's commercial gain without authorization.

21.    As a direct and proximate result of National Tobacco's conduct as aforesaid, Plaintiffs have been damaged by lost income in an amount to be determined at trial, but in no event less than $285,000.

22.    National Tobacco acted deliberately to injure Plaintiffs and otherwise in conscious disregard of Plaintiffs' rights. Further, National Tobacco performed these acts, or otherwise authorized, ratified or had knowledge of them, and thereby acted in conscious disregard of Plaintiffs' rights.

23.    National Tobacco's conduct as alleged above has damaged and will continue to damage Plaintiffs' goodwill and reputation and has resulted in losses to Plaintiffs and illicit gain of profit to National Tobacco in an amount to be determined at trial.

24.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity pursuant to the common law of California.

25.    The acts and conduct of National Tobacco as alleged above in this Complaint constitute a misappropriation of the right of publicity in the form of the unauthorized commercial

Page 5 – PLAINTIFFS' COMPLAINT

use of Plaintiffs' name and photograph in violation of California Civil Code §3344.

26.     The aforementioned acts of National Tobacco were willful, oppressive, fraudulent and malicious and therefore, National Tobacco's conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish National Tobacco and to make examples of them to others as provided for in Cal. Civ. Code § 3344(a).

## THIRD CAUSE OF ACTION

Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.)*

27.     Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1 through 26, inclusive.

28.     The acts and conduct of National Tobacco as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practice as defined by California Bus. & Prof. Code § 17200 *et seq.*

29.     National Tobacco's violation of federal law (15 U.S.C. § 1125), state law (Cal. Civ. Code § 3344) and common law, as alleged above in this Complaint, constitute unlawful business practices.

30.     National Tobacco acts of unfair competition have proximately caused and will continue to cause Plaintiffs to suffer injury in fact and loss of money in an amount to be determined at trial.

31.     National Tobacco's acts of unfair competition also have caused and are causing irreparable and incalculable injury to Plaintiffs' reputation and goodwill.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiffs make a DEMAND FOR JURY TRIAL and demands judgment in their favor against Defendant as follows:

Page 6 – PLAINTIFFS' COMPLAINT

(i)     Plaintiffs' general, special and actual damages in a sum to be determined at trial but in no event less than $285,000;

(ii)    Defendant's profits pursuant to 15 U.S.C. § 1125, Cal. Civ. Code § 3344 and Cal. Bus. & Prof. Code § 17200 *et seq.* and alternatively for statutory damages pursuant to Cal. Civ. Code § 3344;

(iii)   Judgment for punitive damages in a sum to be determined at trial;

(iv)   An award to Plaintiffs of their attorneys' fees and costs of suit pursuant to Cal. Civil Code § 3344(a); and

(v)    Such other and further relief as the Court deems just and proper.


DATED:  April 11, 2008

MCNAMER AND COMPANY, PC


By _____

Anthony E. McNamer, CSB #178911
MCNAMER AND COMPANY, PC
519 SW Third Avenue, Suite 601
Portland, Oregon 97204
Telephone: (503) 727-2500
Facsimile: (503) 727-2501

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **National Tobacco Company, LP** | Case No. CV. 04-1443-JE |
| **Plaintiff**, | |
| v. | **DECLARATION SOLOMON DAVID IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND FORUM NON CONVENIENS** |
| **Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving p.k.a. Lifesavas,** | |
| **Defendants**. | |

SOLOMON DAVID declares and states as follows:

     1.      I am a member of the musical group Lifesavas.   Marlon Irving is the other member of the group.

     2.      I am an individual and I reside in Portland, Oregon.

     3.      It was recently discovered that, since October 25, 2007, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig Zag branded products.  National Tobacco featured us on their website as "Zig Zag Artists."   National Tobacco had no license or authority to use our names, likeness and biography and therefore violated our right of publicity.

     4.      On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd.,



Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate for their unlawful use of our names, likeness and biography to promote their products.

4.      National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.   I was not served until April 21, 2008.

5.      On April 11, 2008 a substantive lawsuit was filed by me, Marlon Irving and Raymond Riley against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01931, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.   National Tobacco was served on April 14, 2008 – seven days prior to my service in this matter.

6.      Other than the occasional performance in New York, I have no contacts with New York.   I do not reside there.   All of the defendants in this action reside in either Oakland, California or Portland, Oregon.   I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon.   We are all individuals, trying to make a living as musical artists.   It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York.   This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.      It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California.   National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I

understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 28, 2008 in Oakland, California

_____  5-28-08
Solomon David

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **National Tobacco Company, LP** | Case No. CV. 04-1443-JE |
| **Plaintiff,** | |
| v. | **DECLARATION MARLON IRVING IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND FORUM NON CONVENIENS** |
| **Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving p.k.a. Lifesavas,** | |
| **Defendants**. | |

MARLON IRVING declares and states as follows:

1.     I am a member of the musical group Lifesavas.   Solomon David is the other member of the group.

2.     I am an individual and I reside in Portland, Oregon.

3.     It was recently discovered that, since October 25, 2007, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig Zag branded products.  National Tobacco featured us on their website as "Zig Zag Artists."   National Tobacco had no license or authority to use our names, likeness and biography and therefore violated our right of publicity.

4.     On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd.,



Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate for their unlawful use of our names, likeness and biography to promote their products.

4.      National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.   I was not served until April 24, 2008.

5.      On April 11, 2008 a substantive lawsuit was filed by me, Solomon David and Raymond Riley against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01931, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.   National Tobacco was served on April 14, 2008 – ten days prior to my service in this matter.

6.      Other than the occasional performance in New York, I have no contacts with New York.   I do not reside there.   All of the defendants in this action reside in either Oakland, California or Portland, Oregon.   I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon.   We are all individuals, trying to make a living as musical artists.   It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York.   This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.      It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California.   National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I

understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 28, 2008 in Portland, Oregon

Marlon Irving

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **National Tobacco Company, LP** | Case No. CV. 04-1443-JE |
| **Plaintiff,** | |
| v. | **DECLARATION XAVIER MOSLEY IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND FORUM NON CONVENIENS** |
| **Timothy Parker and Xavier Mosley p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving p.k.a. Lifesavas,** | |
| **Defendants.** | |

XAVIER MOSLEY declares and states as follows:

1.     I am a member of the musical group Blackalicious.    Timothy Parker is the other member of the group.

2.     I am an individual and I reside in Oakland, California.

3.     It was recently discovered that, since June 12, 2006, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig Zag branded products.  For nearly two years National Tobacco featured us on their website as "Zig Zag Artists."   National Tobacco had no license or authority to use our names, likeness and biography and therefore violated our right of publicity.

4.     On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd.,



Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate us for the nearly two years in which they have been unlawfully using our names, likeness and biography to promote their products.

4.      National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.  I was never personally served in this matter, but my New York counsel agreed to accept service on my behalf on May 7, 2008.

5.      On April 11, 2008 a substantive lawsuit was filed by Timothy Parker and myself against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01933, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.  National Tobacco was served on April 14, 2008 – over three weeks prior to my service in this matter.

6.      Other than the occasional performance in New York, I have no contacts with New York.  I do not reside there.  All of the defendants in this action reside in either Oakland, California or Portland, Oregon.  I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon.  We are all individuals, trying to make a living as musical artists.  It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York.  This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.      It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California. National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 28, 2008 in Oakland, California



Xavier Mosley

Page 3 – DECLARATION OF XAVIER MOSELY IN SUPPORT OF MOTION TO DISMISS

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **National Tobacco Company, LP** | Case No. CV. 04-1443-JE |
| **Plaintiff,** | |
| v. | **DECLARATION TIMOTHY PARKER** |
| **Timothy Parker and Xavier Mosley p.k.a.** | **IN SUPPORT OF MOTION TO** |
| **Blackalicious, Raymond Riley p.k.a. Boots** | **DISMISS FOR IMPROPER VENUE** |
| **Riley, Solomon David and Marlon Irving** | **AND FORUM NON CONVENIENS** |
| **p.k.a. Lifesavas,** | |
| **Defendants.** | |

TIMOTHY PARKER declares and states as follows:

1.    I am a member of the musical group Blackalicious.    Xavier Mosley is the other member of the group.

2.    I am an individual and I reside in Oakland, California.

3.    It was recently discovered that, since June 12, 2006, National Tobacco Company LP ("National Tobacco") has been using our names, likeness and biography to promote its products, specifically its Zig Zag branded products.  For nearly two years National Tobacco featured us on their website as "Zig Zag Artists."   National Tobacco had no license or authority to use our names, likeness and biography and therefore violated our right of publicity.

4.    On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd.,

Page 1 – DECLARATION OF TIMOTHY PARKER IN SUPPORT OF MOTION TO DISMISS



Louisville, KY 40212-2238, demanding that they cease their violation of our right of publicity and compensate us for the nearly two years in which they have been unlawfully using our names, likeness and biography to promote their products.

4.       National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008. I was not served until April 18, 2008 at 7:22 p.m (after business hours)

5.       On April 11, 2008 a substantive lawsuit was filed by Xavier Mosley and myself against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01933, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition. National Tobacco was served on April 14, 2008 – four days prior to my service in this matter.

6.       Other than the occasional performance in New York, I have no contacts with New York. I do not reside there. All of the defendants in this action reside in either Oakland, California or Portland, Oregon. I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon. We are all individuals, trying to make a living as musical artists. It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York. This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.       It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California. National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I

Page 2 – DECLARATION OF TIMOTHY PARKER IN SUPPORT OF MOTION TO DISMISS

PAGE 4/4 * RCVD AT 5/29/2008 5:10:23 PM [Central Daylight Time] * SVR:CHRFAX02/0 * DNIS:3000 * CSID:510 465 8689 * DURATION (mm-ss):01-10

understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 29, 2008 in Oakland, California

_____
Timothy Parker

Page 3 – DECLARATION OF TIMOTHY PARKER IN SUPPORT OF MOTION TO DISMISS

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**National Tobacco Company, LP**

             **Plaintiff,**

       v.

**Timothy Parker and Xavier Mosley
p.k.a. Blackalicious, Raymond Riley
p.k.a. Boots Riley, Solomon David and
Marlon Irving p.k.a. Lifesavas,**

          **Defendants.**

Case No. CV. 04-1443-JE

**DECLARATION RAYMOND
RILEY IN SUPPORT OF
MOTION TO DISMISS FOR
IMPROPER VENUE AND
FORUM NON CONVENIENS**

RAYMOND RILEY declares and states as follows:

1.      I am a musical artist professionally known as Boots Riley.

2.      I am an individual and I reside in Oakland, California.

3.      It was recently discovered that, since October 17, 2007, National Tobacco Company LP ("National Tobacco") has been using my name, likeness and biography to promote its products, specifically its Zig Zag branded products.  National Tobacco featured me on their website as a "Zig Zag Artist."   National Tobacco had no license or authority to use my name, likeness and biography and therefore violated my right of publicity.

4.      On March 28, 2008 we sent a letter from our California attorney, Anthony McNamer, Esq., to National Tobacco's headquarters located at 3029 W Muhammad Ali Blvd., Louisville, KY 40212-2238, demanding that they cease their violation of our right of



publicity and compensate me for their unlawful use of my name, likeness and biography to promote their products.

4.    National Tobacco's counsel contacted our attorney, and we were attempting to resolve the matter when, without prior warning, National Tobacco filed this suit in New York on April 4, 2008.  I was not served until April 19, 2008.

5.    On April 11, 2008 a substantive lawsuit was filed by me and the member of the musical group Lifesavas (Solomon David and Marlon Irving) against National Tobacco Company L.P. in the U.S. District Court for the Northern District of California, Case No. C09-01931, for False Designation of Origin, Misappropriation of Right of Publicity and Unfair Competition.  National Tobacco was served on April 14, 2008 - five days prior to my service in this matter.

6.    Other than the occasional performance in New York, I have no contacts with New York.  I do not reside there.  All of the defendants in this action reside in either Oakland, California or Portland, Oregon.  I assume that we would be the primary witnesses in this case, along with our managers, who also reside in California and Oregon. We are all individuals, trying to make a living as musical artists.  It would be incredibly expensive and inconvenient to force all five individual defendants to defend an action in New York. This is particularly true since National Tobacco is headquartered in Louisville, Kentucky, and the only nexus New York has to this action is that National Tobacco's attorneys have an office there.

7.    It would also be completely inefficient to force the individual defendants to defend an action here, when the substantive claims that underlie National Tobacco's declaratory relief "claims" are all contained in the action currently pending in the Northern District of California. National Tobacco's counsel also has an office in San Francisco, and has appeared on their behalf in the California action.

I hereby declare that the above statement is true to the best of my knowledge and belief and that I

understand that is made for use as evidence in court and is subject to penalty for perjury.

EXECUTED on May 28, 2008 in Oakland, California

Raymond Riley

Page page3 – DECLARATION OF RAYMOND RILEY IN SUPPORT OF MOTION TO DISMISS