UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

National Tobacco Company, L.P.,

               Plaintiff,

          -against-

Timothy Parker and Xavier Mosley, p.k.a.
Blackalicious, Raymond Riley, p.k.a. Boots
Riley, Solomon David and Marlon Irving,
p.k.a. Lifesavas,

               Defendants.

No.  08-cv-3383 (SAS)

---

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

Marcella Ballard
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel.:   212.626.4100
Fax:    212.310.1600

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF FACTS ................................................................................. 2

    A.    ZigZagLive Tour .................................................................................. 2

    B.    Blackalicious Performed in Boston at an NTC-Sponsored Event ........................ 2

    C.    Riley and Lifesavas Performed in New York Under the Galactic Funk
        Touring, Inc. Agreement ....................................................................... 3

    D.    NTC's Complaint for a Declaratory Judgment .................................... 5

    E.    Plaintiffs' California Actions ............................................................... 6

II.   ARGUMENT ................................................................................................. 7

    A.    Venue is Proper in the Southern District of New York ....................... 7

        1.    Substantial Events Giving Rise to the Claims Occurred in New
            York ............................................................................................ 8

        2.    The Forum Selection Clause Mandates Venue in New York ................. 9

            a.    Defendants Are Bound Because Peck Was Their Agent ............. 10

            b.    Defendants' Close Relationship to Galactic Funk Touring,
                Inc. and the Agreement Requires Enforcement of the
                Forum Selection Clause ......................................................... 11

            c.    Resolution of the Claims Relates to Interpretation of the
                Agreement ............................................................................ 12

    B.    Forum Non Conveniens Provides No Basis for Dismissal ................... 13

    C.    Transfer of Venue Is Not Justified ..................................................... 13

        1.    The Northern District of California Is Not a Proper Venue ................... 14

        2.    Transfer Is Not Appropriate for Convenience of Parties or in the
            Interest of Justice ...................................................................... 14

            a.    Declaratory Actions Are Appropriate ....................................... 14

            b.    NTC's Choice of Venue Is Appropriate ..................................... 15

i

**TABLE OF CONTENTS**
**(continued)**

**Page**

    c.    Private Factors Support Venue in This District ......................... 16

    d.    Public Factors Support Venue in This District ........................... 16

III.    CONCLUSION....................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

CASES

Beatie & Osborn LLP v. Patriotic Scientific Corp.,
    431 F. Supp. 2d 367 (S.D.N.Y. 2006) ..........................................................13, 14

Burrow Paper Corp. v. Moore & Assocs.,
    No. 07 Civ. 62, 2007 WL 2089682 (N.D.N.Y. July 20, 2007) ............................. 12

Central Hudson Gas & Electric Corp. v. Benjamin F. Shaw Co.,
    465 F. Supp. 331 (S.D.N.Y. 1978) ...................................................................... 15

CFirstClass Corp. v. Silverjet PLC,
    No. 07 Civ. 6371, 2008 WL 2389811 (S.D.N.Y. June 11, 2008) ......................... 12

Day Vill. L.P. v. CW Capital L.L.C.,
    2006 WL 2572118 (S.D.N.Y. Sept. 6, 2006) ........................................................ 8

Dex Prods. v. Houghteling,
    No. 05 Civ. 5126, 2006 WL 1751903 (N.D. Cal. June 23, 2006) ........................... 9

Dorna USA, LLC v. Lighthouse Superscreens, Inc.,
    No. 02 Civ. 8973, 2004 WL 2721239 (S.D.N.Y. Nov. 24, 2004)......................... 11

E.P.A. v. Port Authority of N.Y. and N.J.,
    162 F. Supp. 2d 173 (S.D.N.Y. 2001) ............................................................ 7, 13

Employers Ins. of Wausau v. Fox Entmn't Group, Inc.,
    522 F.3d 271 (2d Cir. 2008)................................................................................ 15

Hall v. South Orange,
    89 F. Supp. 2d 488 (S.D.N.Y. 2000) ..................................................................... 9

Jamba Juice Co. v. Jamba Group, Inc.,
    No. 01 Civ. 4846, 2002 WL 1034040 (N.D. Cal. May 15, 2002) .......................... 9

Knipe v. Skinner, 999 F.2d 708 (2d Cir. 1993) .......................................................... 7

Quality King Distributors v. KMS Research, Inc.,
    946 F. Supp. 233 (E.D.N.Y. 1996)................................................................14, 15

Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,
    549 U.S. 422 (2007)............................................................................................ 13

The Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972) ............................................................................................... 10

<u>United States SBA v. Citibank, N.A.,</u> 1997 WL 45514 (S.D.N.Y. Feb. 4, 1997) ........................ 7

<u>Weingrad v. Telepathy, Inc.,</u>
    2005 WL 2990645 (S.D.N.Y. Nov. 3, 2005) ...................................................................... 12

## STATUTES

28 U.S.C. § 1391(b)(1) ............................................................................................................. 14

28 U.S.C. § 1391(b)(2) ........................................................................................................8, 9, 14

28 U.S.C. § 1391(b)(3) ............................................................................................................. 14

28 U.S.C. § 1404 .................................................................................................................... 1

28 U.S.C. § 1404(a) ............................................................................................................13, 14

28 U.S.C. § 1404(a), and (2) ...................................................................................................... 13

28 U.S.C. § 1406(a) ................................................................................................................. 13

NYCDMS/1090648.4

Defendants' Motion to Dismiss for improper venue and *forum non conveniens* should be denied because: (1) a forum selection clause mandates New York courts as the proper venue for this dispute, and (2) the Southern District of New York is the district in which a substantial part of the events leading to the claim occurred: the web page at issue in this case is published from New York by Plaintiff's New York based agent, and contained information relating in large part to Defendants' performances in New York and elsewhere on the East Coast. In their moving papers, Defendants have introduced no testimonial or documentary evidence whatsoever that disputes the application of the forum selection clause, nor that supports the notion that any part of the events giving rise to the claims occurred in their proffered alternative forum, the Northern District of California. Defendants' reliance on the doctrine of *forum non conveniens* to support their transfer motion is entirely misplaced, as the alleged alternative venue is not a foreign tribunal.

Further, the convenience factors considered under 28 U.S.C. § 1404 dictate that this action remain in New York: (1) the majority of the witnesses reside in New York, (2) one of the concerts at issue took place in New York[1] and all Defendants – who each separately concede they are "nationally-touring recording artists" – play concerts in this venue, and, (3) other than the temporary residence of some, but not all, of the Defendants in California, that State has absolutely no connection with the dispute. For these reasons, and as we set forth below, Defendants' motion should be denied.

---

[1] The others were in Boston, Massachusetts, Raleigh, North Carolina and Athens, Georgia. None of the concerts at which the Defendants performed in connection with the ZigZagLive sponsorship occurred in or near California.

# I.    STATEMENT OF FACTS

## A.    ZigZagLive Tour

NTC is the exclusive distributor of Zig-Zag® brand cigarette paper products in the United States.  Compl. at ¶ 14.[2] As part of its marketing campaign, NTC sponsors and promotes concerts under its Zig-Zag® Live Club Tour series ("ZigZagLive") as well as music events organized by other parties such as radio stations or local press.  Id. ¶ 17.  NTC engaged CMJ, a music promotion and marketing agency based in New York, New York, to undertake the ZigZagLive marketing and operations related to the concert series.  Chane Dec. ¶ 1.  NTC, through CMJ, operates a website at the URL www.zigzaglive.com (the "Website") on which viewers may learn about various musical guests in the ZigZagLive tour and concert schedule, as well as musical guests performing at other NTC sponsored events.  Compl. at ¶ 18.  NTC's ZigZagLive operations are run from CMJ's offices in New York City, New York.  Chane Dec. ¶ 1.  NTC's agent CMJ publishes the Website and controls its content from CMJ's headquarters in New York.  McDonald Dec. ¶ 2.

## B.    Blackalicious Performed in Boston at an NTC-Sponsored Event

As part of the ZigZagLive tour, NTC sponsored (along with other sponsors) a music festival in Boston, Massachusetts in May 2006 called the Phoenix Best Music Poll 2006 ("Phoenix 2006").  Chane Dec. ¶ 2.  NTC's Phoenix 2006 sponsorship agreement was with Phoenix Media/Communications Group, a Massachusetts corporation ("Phoenix Media").  Id. at ¶¶ 2-3, Ex. A.  Phoenix 2006 was organized and publicized by Phoenix Media, which includes the Boston Phoenix newspaper and its affiliated radio stations in Boston and surrounding areas.

---

[2] "Complaint" or "Compl." as used in this Opposition refers to Plaintiff NTC's Amended Complaint filed April 7, 2008 in this action.

Id. ¶ 2.  NTC's sponsorship, logo and advertisements appeared in press, on concert posters and on websites advertising Phoenix 2006, including on posters identifying Blackalicious as performers at Phoenix 2006.  Chane Dec. Ex. B.  Blackalicious performed at Phoenix 2006 in Boston, Massachusetts.  At no time did Blackalicious complain about NTC's sponsorship of the concert.  Chane Dec. ¶ 8; Compl. ¶ 39.  After Phoenix 2006, ZigZagLive truthfully posted accurate and newsworthy information about Blackalicious and its performance at Phoenix 2006 on the ZigZagLive Website, along with information about other bands appearing at Phoenix 2006.  Chane Dec. ¶¶ 5-8.  All of the Blackalicious information for the Website came from Phoenix Media which CMJ understood was provided to Phoenix Media by the artists for use in the promotion of the tour.  Id. ¶¶ 5-6.

## C.    Riley and Lifesavas Performed in New York Under the Galactic Funk Touring, Inc. Agreement

In October 2007, NTC entered into an Artist Sponsorship Agreement (the "Agreement") with an entity called "Galactic Funk Touring, Inc." to sponsor four performances in November 2007 (the "Performances").  McDonald Dec. Ex. A. at p.1, § 1.  The sponsored Performances were in New York, Boston, Raleigh, North Carolina and Athens, Georgia.  McDonald Dec. ¶ 3.  NTC's agent CMJ executed the Agreement in New York, NY, and Paul Peck signed the Agreement on behalf of Galactic Funk Touring, Inc. –  an entity that was neither described further nor set forth specifically in the Agreement – from his New York, NY offices.  McDonald Dec. Ex. A.

Peck, located in New York, then provided to CMJ the names of the performers to be included in the Performances.  McDonald Dec. ¶¶ 6-9, Ex. B.  Peck directed CMJ to the website www.galacticfunk.com, which contained (and still contains) the professional names and

likenesses of Riley and the Lifesavas, along with the band "Galactic" and others.  Id.
ZigZagLive then submitted proposed promotional materials containing Boots Riley's and
Lifesavas' names to Peck for his prior approval as contemplated by the Agreement.  See id. ¶¶ 6-
9, Ex. A p.2 § 2.  Peck responded "I have no problem with the general look of it but need for the
bands, guest MC and support info to be as a whole larger . . . .  Please make the band info and all
of the artist info the biggest info in the image."  Id. ¶ 4, Ex. B (emphasis added).  After
ZigZagLive revised the references to Boots Riley, Lifesavas, and the other artists to Peck's
specifications, Peck approved the marketing.  Id.  The resulting artwork and showbills referred to
Boots Riley and Lifesavas along with the band Galactic.  McDonald Dec. ¶¶ 8-11.

Defendants Riley and Lifesavas participated at each of the four Performances listed in the
Agreement, in New York, NY, Boston, MA, Raleigh, NC, and Athens, GA.  Boots Riley
performed as the vocalist for the band Galactic – not solo – at the sponsored shows.  Lifesavas
also performed onstage together with Galactic and also as an opening act at the sponsored
Performances.  See Compl. Ex. 1: NYC Showbill, Ex. 2; Chane Dec. ¶ 9; McDonald Dec. ¶ 13.
At the shows, Riley and Lifesavas: (1) signed ZigZagLive promotional posters for the
Performances which they were told would be given away to fans on the Website[3]; (2) socialized

---

[3] This sharply undermines the credibility of the artists and their "sworn" declarations.  None of
the Defendants is claiming that he himself actually "discovered" the ZigZagLive website in
March 2008, as each uses the passive voice to describe that "discovery."  (Riley Dec at ¶ 3 ("It
was discovered…"); David Dec. ¶ 3 (same); Irving Dec. ¶ 3 (same); Mosley Dec. ¶ 3 (same);
Parker Dec. ¶ 3 (same)).  Apparently, none of the artists is willing to take credit for that
"discovery," nor could they credibly do so given their signatures on the ZigZagLive posters
dated in 2007.  (McDonald Dec. Ex. E).  There is a complete absence of explanation by
Defendants for the autographing of ZigZagLive tour posters. Both Boots Riley and each member
of Lifesavas signed the tour posters in 2007. In fact, CMJ informed Boots Riley and Lifesavas
that the posters would be used in connection with the ZigZagLive internet marketing campaign
and Boots Riley and Lifesavas indicated that they were enthusiastic about the ZigZagLive
sponsorship.  (Chane Dec. ¶¶ 13-14).

with ZigZagLive marketing representatives; (3) accepted ZigZagLive merchandise for their own use.  See Chane Dec. ¶¶ 12-14.

Based on the Agreement, the actual and apparent authority of Mr. Peck and Boots Riley and Lifesavas' willing and voluntary appearances on the ZigZagLive tour, NTC truthfully posted information on its website, including show review blogs and links to the performers' own websites, along with information about the band Galactic and various other performers appearing on the ZigZagLive tour.  McDonald Dec. ¶¶ 11-12.  The Website also contained a section where fans could go to a link that displayed autographed tour posters.  Boots Riley and Lifesavas willingly autographed ZigZagLive tour posters at the Performances enumerated in the Agreement for display on the ZigZagLive website.  See Chane Dec. Ex. C; McDonald Dec. Ex. E.  The Agreement between NTC and Galactic Funk Touring, Inc. expressly specified that the courts located in New York City, New York were the only appropriate venue for any disputes and New York substantive law as the law governing disputes.  See McDonald Dec. Ex. A at ¶ 9, "Governing Law and Choice of Forum."

### D.     NTC's Complaint for a Declaratory Judgment

NTC was not aware that the Defendants objected to having information about them on the ZigZagLive website until March 28, 2008, when defendants' Oregon counsel wrote a letter to NTC on behalf of all Defendants protesting for the first time NTC's use of the Defendants' names, likenesses and truthful biographical information posted on the Website and demanded payment of over $400,000.  Ballard Dec. Ex. A.  The letter demanded that NTC pay that sum by April 4, 2008, or Defendants would "have no choice but to issue public statements decrying the unauthorized use of their names, likenesses and biographies."  Id. The letter indicated that

defendants intended to file suit in California and Oregon, but did not state a date on which they would do so. Ballard Dec. ¶ 4.  To NTC's knowledge, no defendant has filed suit in Oregon.

After rejecting Defendants' claims via telephone, and facing unspecific "possible lawsuits in California and/or Oregon" (Amended Memorandum In Support of Motion to Dismiss ("Am. Mem.") at p. 2), NTC filed this action on the evening of April 4, 2008 (the "New York Action") seeking a declaratory judgment that NTC had not infringed Plaintiffs' trademarks, rights of publicity, or other common law rights.  NTC served Defendants' Oregon counsel with a copy of the file-stamped Complaint on Monday, April 7, 2008, as soon as it had received a copy back from the Southern District of New York's clerk's office.  Ballard Dec. ¶ 14.  Defendants' counsel refused to accept service of the Complaint, requiring NTC to attempt to locate and serve musicians with process as they toured.  Ballard Dec. ¶¶ 19-21.  After Defendants' Oregon counsel threatened that they would incite lawsuits from other performers and make false statements, NTC amended its Complaint on April 9, 2008.  Ballard Dec. ¶¶ 15-17.

E.    **Plaintiffs' California Actions**

On April 11, 2008, a full week after NTC had filed the New York action, Defendants' Oregon counsel, who is also licensed in California, filed two separate Complaints against NTC in the Northern District of California.  One action, Case No. C-08-1933, identified the members of Blackalicious as plaintiffs and the other, Case No. C-08-1931, listed Boots Riley and the members of Lifesavas as plaintiffs (together, the "California Actions").  Other than the temporary residence of some of the Defendants in California,[4] Defendants do not allege any event or omission giving rise to their claims that occurred in California.

---

[4] Defendant Marlon Irving, resides in Portland, Oregon.  All are nationally touring artists.

## II.    ARGUMENT

### A.    Venue is Proper in the Southern District of New York

NTC filed suit in the Southern District of New York because it is the district mandated by the forum selection clause governing disputes relating to the Agreement covering Performances by Riley and Lifesavas and is a district where a substantial part of the events and omissions giving rise to the claims regarding all Defendants occurred.

Defendants note that the plaintiff has the burden to show that venue is proper upon facing a motion to dismiss, but fail to acknowledge, "the court must take all allegations in the Complaint as true, unless contradicted by the defendants' affidavits." E.P.A. v. Port Authority of N.Y. and N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001).  Defendants' declarations fail to assert facts that contradict the allegations in the Complaint on which venue is based: namely, that venue is proper in New York because ZigZagLive's concert promotion and website operations are based in New York (Compl. ¶¶ 19, 25 & Ex. 2), and pursuant to a binding forum selection clause in the Agreement.[5]  None of the Defendants, for example, deny that the Agreement governs, nor do they deny that Peck acted as the agent of Boots Riley and Lifesavas in connection with the Performances, nor do Defendants deny that ZigZagLive was present at and interacted with the Defendants at the Performances, nor do the Defendants deny that they participated willingly in the ZigZagLive sponsored events.  See Defendants' Decs.

Furthermore, in deciding a motion to dismiss for improper venue, a court may consider facts outside the pleadings, including declarations, and should view all facts in the light most

---

[5] Defendants' declarations are defective and should be stricken, as they are made only upon "the best of [each Defendant's] knowledge and belief" and only state conclusions.  See United States SBA v. Citibank, N.A., 1997 WL 45514, at *2-3 (S.D.N.Y. Feb. 4, 1997)(any part of an affidavit which does not contain specific facts of which the affiant has first-hand knowledge or stating ultimate facts or legal conclusions must be disregarded).  Further, Defendants cannot make such arguments for the first time in a reply brief.  Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993).

favorable to the plaintiff.  See Day Vill. L.P. v. CW Capital L.L.C., 2006 WL 2572118

(S.D.N.Y. Sept. 6, 2006).

> **1.    Substantial Events Giving Rise to the Claims Occurred in New York**

Contrary to Defendants' assertions, NTC does not base its claims that venue is proper

under 28 U.S.C. § 1391(b)(2) solely on the fact that the website can be viewed from New York,

nor solely on Defendants' admitted concert appearances in New York.  Here, New York has by

far the most substantial contact with the case.  NTC's allegedly-infringing Website is controlled

from New York.  See McDonald Dec. ¶ 2.  NTC's agent runs the ZigZagLive promotions from

its offices in New York.  See id.  NTC's agent acted from New York in contracting for all

defendants' sponsored Performances. See id. ¶ 3; Chane Dec. ¶ 3.

Defendants Riley and Lifesavas participated in an NTC-sponsored Performance in New

York that provided – along with three other East Coast Performances – the basis for posting

accurate and newsworthy materials on the Website.  See McDonald Dec. ¶ 12. Riley's and

Lifesavas' Performances were secured under an Agreement signed by their agent Peck in New

York.  See id. ¶ 10.  The Agreement mandates venue in New York. See id. Ex. A.  Defendants'

names and likenesses were published on the Website from New York.  See id. ¶ 2.

Likewise, NTC's New York agent signed the contract to sponsor Blackalicious's

performance at Phoenix 2006 in Boston. See Chane Dec. ¶¶ 2-3.  The counter-party – which

supplied all Blackalicious material for the website – is a Massachusetts corporation operating in

and around Massachusetts.  See id.  Blackalicious' material was also posted on the Website in

New York.  See id.

Defendants also have entirely ignored NTC's declaratory judgment claims, asserting

that "none of [Defendants'] tortious acts are alleged to have taken place during the

aforementioned concert performance, nor . . . in the State of New York."  Venue under

1391(b)(2) depends upon the location of the actions of the allegedly infringing party, whether the allegedly infringing party is a defendant or a plaintiff in a declaratory judgment action. <u>Dex Prods. v. Houghteling</u>, No. 05 Civ. 5126, 2006 WL 1751903, at *7-8 & n.6 (N.D. Cal. June 23, 2006).  Instead, venue is proper where events giving rise to the claim occurred, regardless of whether there are other venues which also could be proper. <u>See</u> <u>Hall v. South Orange</u>, 89 F. Supp. 2d 488, 491 (S.D.N.Y. 2000); <u>see also</u> <u>Jamba Juice Co. v. Jamba Group, Inc.</u>, No. 01 Civ. 4846, 2002 WL 1034040, at *1-3 (N.D. Cal. May 15, 2002) (establishing that the location of the allegedly infringing actions is dispositive under 28 U.S.C. § 1391(b)(2)).  As set forth above, NTC's actions of which Defendants complain regarding the ZigZagLive.com website took place in New York.

In contrast, defendants have identified no relevant events in their preferred forum of California.  Even absent any forum selection clause, the relevant events center on New York, and branch out to include Massachusetts, North Carolina and Georgia – not California.  Accordingly, Plaintiff has established that New York is the proper venue under 28 U.S.C. § 1391(b)(2).

### 2.    The Forum Selection Clause Mandates Venue in New York

Defendants Boots Riley and Lifesavas, who both appeared with the band "Galactic" on all four concert dates enumerated in the Artist Sponsorship Agreement, are bound by the forum selection clause in the Agreement on three bases:  (1) Galactic Funk Touring Inc.'s manager had actual or apparent authority to contract on their behalf; (2) even if Galactic Funk Touring Inc. lacked authority, Defendants are so closely related to the Galactic Funk Touring Inc. and the Agreement that the forum selection clause governs; and (3) the resolution of the dispute relates to the Agreement.

Forum selection clauses are <u>prima facie</u> valid and are enforceable absent a strong showing by the party opposing the clause "that enforcement would be unreasonable or unjust, or

-9-

that the clause [is] invalid for such reasons as fraud or overreaching." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). Defendants have not demonstrated why enforcement is unreasonable nor have they established that the clause was the result of fraud. Defendants would need to show that trial in New York would be so "gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court." Id. at 18. Defendants routinely tour across the country as "nationally touring recording artists" and appear often in New York to play concerts. New York as a venue would hardly be "gravely" difficult for them.

### a.       Defendants Are Bound Because Peck Was Their Agent

As set forth above, Defendants ceded to Peck control over use of their names and likenesses in connection with Galactic Funk Touring, Inc. Defendants do not challenge this fact in their affidavits or proffer a single page of documentary evidence to dispute it. Peck signed the Agreement on behalf of "Galactic Funk Touring, Inc."[6] The Agreement does not enumerate the specific members of Galactic Funk Touring, Inc. Boots Riley and Lifesavas admittedly allowed Galactic Funk Touring, Inc. to make the arrangements for the Performances where they performed. They came to the ZigZagLive tables at those Performances – which were festooned with NTC's ZigZagLive promotional materials – and proceeded to autograph posters clearly featuring the ZigZagLive logos so that NTC could give them out to fans who requested them and

---

[6] At the scheduling conference before this Court on June 13, 2008, counsel for Defendants argued that they are not members of the band Galactic, and that their individual bands have not "merged" with Galactic, claiming that "if Van Morison opens for the Rolling Stones, he is not thereafter a member of the Rolling Stones." NTC is not arguing about whether or not Riley and Lifesavas have "merged" with the band Galactic. It is irrelevant whether Defendants were "merged" with a band called Galactic where they delegated all authority and allowed Peck to make arrangements for the shows and direct NTC in the use of their names and likenesses in promotional materials for the Performances expressly set forth in the Agreement. In any event, Defendants have put forth not a scintilla of evidence to dispute NTC's allegations in the Complaint on these points.

offer them through the Website in connection with its ZigZagLive marketing.  (McDonald Dec. Ex. E).

Riley and Lifesavas do not deny in their declarations that they allowed Peck to act on their behalf with respect to the Performances and the related use of their likenesses.  Even if they did not give Peck explicit permission to make arrangements relating to the Performances and use of their likenesses,  a "principal is bound by and liable for actions taken by his agents, regardless of whether the agent acts with the actual or apparent authority of the principal, and whether the agency relationship is express or implied."  <u>Dorna USA, LLC v. Lighthouse Superscreens, Inc.</u>, No. 02 Civ. 8973, 2004 WL 2721239, at *2 (S.D.N.Y. Nov. 24, 2004).  Defendants performed for crowds who attended the concerts through ZigZagLive promotional efforts approved by Galactic Funk Touring, Inc., including show bills, and newspaper and other ad placements paid for by ZigZagLive which contained their names and were approved by Peck.  Defendants did not disclaim these promotions after becoming aware of them.  Defendants all received the benefit of promotion of the Performances through the ZigZagLive materials bearing Defendants' professional names.  (McDonald Dec. ¶¶ 4, 6, Ex. B (listing newspapers to be used in promotions); Chane Dec. Ex. A).

In addition to inducing NTC's reliance for its ongoing publicity, Defendants' actions in signing the ZigZagLive-logo posters for distribution on the Website and accepting the benefits of publicity for the Performances ratify the Agreement entered into by their agent.

> **b.    Defendants' Close Relationship to Galactic Funk Touring, Inc. and the Agreement Requires Enforcement of the Forum Selection Clause**

Defendants are further bound by the forum selection clause because of their close relationship to the contract.  "A non-party is "closely related" to a dispute if its interests are "completely derivative" of and "directly related to, if not predicated upon" the signatory party's

interests or conduct," and can, in that situation, be bound to a forum selection clause they did not sign. See Weingrad v. Telepathy, Inc., 2005 WL 2990645 (S.D.N.Y. Nov. 3, 2005) (holding that non-parties may be bound to forum selection clause where they are "closely related" to the dispute). Defendants undisputedly took part in the four NTC-sponsored Performances under the Agreement. Peck approved the use of Boots Riley's and Lifesavas' names on promotional materials pursuant to the Agreement. See McDonald Dec. Ex. B. NTC promoted Defendants' Performances under the Agreement. Id. Therefore, Defendants claims concerning the use of promotional materials and the ZigZagLive website clearly are "directly related to, if not predicated on" interpretation of the Agreement. See Weingrad, supra.

### c. Resolution of the Claims Relates to Interpretation of the Agreement

"[A] contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract . . . ." CFirstClass Corp. v. Silverjet PLC, No. 07 Civ. 6371, 2008 WL 2389811 (S.D.N.Y. June 11, 2008).

The validity of the infringement and appropriation of likeness claims depends upon and is inextricably entwined with the construction of the Agreement. Defendants acted in concert – pardon the pun – together with the band "Galactic" at the sponsored Performances. The Agreement signatories intended to benefit, and did benefit Boots Riley and Lifesavas through the publicity for the shows and through ZigZagLive promotions both pre-show and continuing on the ZigZagLive website. "As a matter of law, a third-party beneficiary of a contract is closely related to the signatories such that the invocation of a forum-selection clause by any of the three parties is foreseeable." Burrows Paper Corp. v. Moore & Assocs., 07 Civ. 62, 2007 WL 2089682, at *3 (N.D.N.Y July 20, 2007) (transferring case under 28 U.S.C. § 1406(a)).

-12-

Though NTC does not allege that Blackalicious is subject to the venue selection clause in the Agreement, "dismissal of an improperly venued claim is not warranted if it is factually related to a properly venued claim and the claims could be considered 'one cause of action with two grounds of relief.'"[7]  See E.P.A., 162 F. Supp. 2d at 183.  Blackalicious' dispute against NTC over the material posted on the ZigZagLive website is so closely related to Boots Riley and Lifesavas' dispute against the same entity over the same action, brought by a single lawyer, that it should not be dismissed for improper venue.

### B.    Forum Non Conveniens Provides No Basis for Dismissal

"The common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' . . . and perhaps in rare instances where a state or territorial court serves litigational convenience best. . . . For the federal-court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action [under 28 U.S.C. § 1404(a)]".  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422 (2007).  Therefore, Defendants' motion to dismiss based upon *forum non conveniens* is entirely misplaced.

### C.    Transfer of Venue Is Not Justified

Assuming that Defendants meant to move to transfer under 28 U.S.C. § 1404(a), they have entirely failed to carry their burden to "establish that (1) the action is one that "might have been brought" in the proposed transferee district, 28 U.S.C. § 1404(a), and (2) the transfer is appropriate given the convenience of parties and witnesses and in the interest of justice."  Beatie & Osborn LLP v. Patriotic Scientific Corp., 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006)(citations

---

[7] As set forth above, NTC has established that this district is a proper venue under 28 U.S.C. § 1391(b)(2) with regard to Blackalicious.

omitted).  The moving party must make a <u>clear-cut</u> showing that transfer is in the best interests of the litigation.  <u>Id.</u>

### 1.    The Northern District of California Is Not a Proper Venue

Defendants mistakenly assert that the Northern District of California is a proper venue because four out of five defendants reside there, while the other resides in Oregon.  But venue is proper in a district where any defendant resides only if all defendants reside in the same state.  <u>See</u>  28 U.S.C. § 1391(b)(1).  Thus, venue is not justified based upon the residence of most defendants.  As demonstrated at length above, none of the events or omissions giving rise to the claims occurred in California; substantial parts occurred in the Southern District of New York, and to a lesser extent, in the District of Massachusetts and within districts in North Carolina and Georgia.  The Southern District of New York and perhaps other districts on the East coast provide districts in which the action could properly be brought under 28 U.S.C. § 1391(b)(2).  Because venue is proper in this district, there is no basis to look for venue under subsection (b)(3), which applies only when there is no other district that is otherwise available.  <u>See</u> 28 U.S.C. § 1391(b)(3).

### 2.    Transfer Is Not Appropriate for Convenience of Parties or in the Interest of Justice

Defendants fail to make any showing, or even analyze, the correct factors influencing whether to transfer under 28 U.S.C. § 1404(a).  The few issues they cite fail to support transfer or dismissal.

### a.    Declaratory Actions Are Appropriate

Defendants argue that NTC improperly filed a declaratory judgment action.  But there is no presumption against exercising jurisdiction over declaratory actions.  <u>See</u> <u>Quality King Distributors v. KMS Research, Inc.</u>, 946 F. Supp. 233, 238 (E.D.N.Y. 1996).  As Defendants

admit, their threats caused NTC to "face <u>possible</u> lawsuits in <u>California and/or Oregon</u>."  Am.

Mem. at p. 2.  Defendants' initial letter had used slightly different language, indicating that suit

would be filed "in California <u>and</u> Oregon."  Ballard Dec. Ex. A (emphasis added).  <u>See</u> <u>Quality</u>

<u>King</u>, 946 F. Supp. at 238 ("[T]his letter does not threaten a future lawsuit, let alone set forth a

date or forum where such a suit would be commenced.").  Defendants' statement was sufficient

to notify NTC that there was an actual case and controversy between Defendants and itself, but

did not contain specific, concrete indications that suit itself was imminent.  <u>See</u> <u>id.</u>  Defendants

did not include a copy of a complaint with a demand letter, nor did they indicate a date certain by

which they would file suit.  Nor did Defendants indicate which forum they intended to file suit in

("Oregon and California"), and indeed, after threatening later that they would file in "Oakland"

they ultimately ended up filing suit in San Francisco.  Ballard Dec. ¶¶ 4, 18.  Instead,

Defendant's communications left NTC exposed to exactly the type of uncertainty and threat of

litigation in multiple venues that declaratory judgments are designed to prevent.  <u>See</u> <u>Central</u>

<u>Hudson Gas & Electric Corp. v. Benjamin F. Shaw Co.</u>, 465 F. Supp. 331, 333 (S.D.N.Y. 1978).

There is no dispute that this action is the first-filed action regarding these issues, and

Defendants have offered nothing to overcome the presumption that the first-filed action should

proceed. <u>See</u> <u>Employers Ins. of Wausau v. Fox Entmn't Group, Inc.</u>, 522 F.3d 271, 274-75 (2d

Cir. 2008) ("As a general rule, where there are two competing lawsuits, the first suit should have

priority.").

#### b.    NTC's Choice of Venue Is Appropriate

Defendants argue that considerations for the weight to be given to a plaintiff's choice of

venue operate on a sliding scale based upon the lawsuit's bona fide connection to the forum of

choice.  Am. Mem. at p. 8.  NTC has extensively demonstrated the connection of this action to

this forum, even if we are to disregard the Agreement's <u>requirement</u> that venue be in New York.

The forum selection clause, both relevant agreements, and the many other factual connections demonstrate that NTC's choice of a New York forum over its home forum in Kentucky is legitimate rather than opportunistic.

Although Defendants argue that the relative means of the parties constitutes an important factor, they have made no showing that they lack the means to pursue the case here.  Further, if means were an issue, Defendants presumably would have filed a single suit in California to save costs, rather than filing <u>two</u> (after threatening suits in disparate venues).   Moreover, Defendants all perform – and presumably earn money – in New York.  <u>See</u> Defendants' Declarations at ¶ 6.

### c.    Private Factors Support Venue in This District

Defendants assert that private factors of convenience support venue in California, but admit that they are all nationally touring musicians.  Am. Mem. at p. 1.  Again, they all perform in New York, and have offered no showing of how often they are actually in California or Oregon.  In contrast, NTC has demonstrated that its agent operating the ZigZagLive Tour and Website at issue is located here in New York.  Counter-signatories to the applicable contracts are in New York or Massachusetts.  The Performances occurred in New York and elsewhere on the East coast.

### d.    Public Factors Support Venue in This District

Defendants' contentions regarding New York's lack of contacts to this matter can only be described as willfully blind in light of the many connections demonstrated above, including two relevant contracts that were executed in New York, one of which mandates venue in New York.  Their pleas to avoid duplicative litigation are undercut by their own actions in filing <u>two</u> <u>separate</u> suits in California, insuring the "redundant or duplicative efforts" they claim to want to avoid.

-16-

### III.   <u>CONCLUSION</u>

For the foregoing reasons, NTC respectfully requests that the Court deny Defendants'

Motion to Dismiss.

Dated: New York, New York.                    Respectfully submitted,
      June 19, 2008
                                      BAKER & McKENZIE LLP
                                      1114 Avenue of the Americas
                                      New York, NY  10036
                                      +1 212 626 4100


                                      By:/s _____
                                          Marcella Ballard
                                          Attorneys for Plaintiff
                                          National Tobacco Company, L.P.

NYCDMS/1090648.4