UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL TOBACCO COMPANY, L.P.<br><br>                      Plaintiff,<br>v.<br><br>TIMOTHY PARKER and XAVIER MOSLEY, p.k.a. BLACKALICIOUS, RAYMOND RILEY p.k.a. BOOTS RILEY, SOLOMON DAVID and MARLON IRVING, p.k.a.LIFESAVAS,<br><br>                      Defendants. | ECF Case<br><br>08-CV-03383(SAS) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

 

David B. Sudzus
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 569-1000
Facsimile: (312) 569-3000

*Attorney for Defendants*

CH01/ 25169633.1

Now come the Defendants TIMOTHY PARKER and XAVIER MOSLEY, p.k.a. Blackalicious, RAYMOND RILEY p.k.a. Boots Riley, and SOLOMON DAVID and MARLON IRVING, p.k.a. Lifesavas (collectively "Defendants"), by and through their attorneys, DRINKER BIDDLE & REATH LLP, and in Reply to Plaintiff's Memorandum of Law In Opposition to Motion to Dismiss and in support of their Motion to Dismiss For Improper Venue and Forum Non Conveniens state as follows:

## I. INTRODUCTION

Rather than attempt to meet their burden of establishing New York as the proper venue for this matter, Plaintiff National Tobacco Company, L.P. (hereinafter "Plaintiff" or "NTC") in its Memorandum of Law in Opposition to Motion to Dismiss (hereinafter "Response") chose to obfuscate the relevant legal issues and instead inundated the Court with a litany superfluous facts and irrelevant case law. In an effort to improperly place the burden on the Defendants, NTC focused not on the Defendants' allegedly tortious actions but on the actions of third parties who have not been named in NTC's action. At the same time, NTC avoids discussing the very actions upon which its complaint is founded: namely, the Defendants' allegedly defamatory actions and their threat of litigation. When one focuses on the issues presented by NTC in their complaint, both the tenuous relationship between this matter and the State of New York and NTC's transparent attempt at forum shopping become abundantly clear.

## II. PLAINTIFF HAS FAILED TO ESTABLISH PROPER VENUE IN NEW YORK

Plaintiff's attempt to meet its burden of establishing proper venue consists of asserting facts that can be placed in one of two categories: 1) actions by non-parties in New York that are irrelevant to NTC's claims; and 2) actions by the Defendants in New York that are irrelevant to NTC's claims. However, a closer examination of the *relevant* facts in this case reveal both that no

CH01/ 25169633.1

substantial event giving rise to Plaintiff's claims occurred in New York and that the forum selection clause cited in a contract between third-parties is not controlling.

### A. Plaintiff's assertion that "substantial events" took place in New York distorts the claims asserted in this case.

NTC correctly notes that "[v]enue under 1391(b)(2) depends upon the location of the action of the allegedly infringing party. . ." and that "venue is proper where events giving rise to the claim occurred." Response at p. 9. However, rather than identifying relevant facts that establish New York as the proper venue, Plaintiff simply refers to its statement of facts which contains information about CMJ (a non-party to this action), Phoenix Media (a non-party to this action), Galactic Funk Touring (a non-party to this action), Paul Peck (a non-party to this action), and the band Galactic (a non-party to this action). What the facts fail to address are the four specific claims asserted by the Plaintiff: declaratory judgment stemming from Defendants' claims of trademark infringement, defamation, tortious interference with a contract, and trade libel.

Plaintiff's declaratory judgment claim asserts that "[i]n light of Defendants' claims of infringement of their alleged trademarks, rights of publicity and other common law rights, Plaintiff has a reasonable belief and imminent fear that Defendants will raise issues relating to alleged trademark infringement . . ." Plaintiff's Amended Complaint (hereinafter "Complaint") at ¶ 54. In considering the substantial facts, one must focus on the actual place of infringement rather than ancillary matters such as the location of the company that maintains its website. *See, e.g., Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994) (finding that the location where an infringing ad was prepared was insubstantial with respect to establishing venue). Accordingly, the fact that CMJ—a non-party that maintains the Plaintiff's website—is headquartered in New York is insufficient to establish venue. Likewise, the fact that any other third-parties not involved in the present lawsuit—such as Galactic Funk Touring—reside in New York is irrelevant because

Plaintiff fails to allege that these parties undertook actions to infringe upon the Defendants' intellectual property rights in New York or anywhere else. Finally, any action undertaken by any of the Defendants in New York (such as making guest appearances at concerts) is clearly insubstantial as they in no way contribute to any of the Plaintiff's immediate allegations in this lawsuit.

Similarly, Plaintiff's remaining three claims are all unrelated to the facts that Plaintiff attempts to spin as somehow being substantial. Plaintiff's present assertions of defamation, tortious interference with a contract, and trade libel on the part of the Defendants all flow from statements made, and actions undertaken, by the Defendants. *See* Complaint at ¶¶ 61-79. Plaintiff's Statement of Facts fails to identify any single such statement or act that took place in New York. Indeed, Plaintiff's Response seems to intentionally ignore that these claims have even been asserted. Nonetheless, it is Plaintiff's duty to establish proper venue, and despite NTC's best attempts to distract the Court with a sideshow-including the elaborate timeline of events purporting to link this matter to New York-it has utterly failed to identify one substantial act of trademark infringement, defamation, tortious interference with a contract or trade libel that occurred in New York.

**B.    The forum selection clause entered into by a third-party does not control this action.**

Plaintiff incredulously continues to assert that the Defendants should be bound by the forum selection clause found in a contract that NTC entered into with a third-party, not involved in the present matte. The very same referenced contract fails to name any single Defendant in any way. Plaintiff offers three bases for reaching this conclusion but again relies on irrelevant and misleading facts in doing so.

Plaintiff first argues that the Defendants are bound by the forum selection clause because the third-party that signed the contract, Paul Peck, was their agent. Of course, this relies on the

- 4 -

Plaintiff's unsubstantiated assertion that the Defendants were somehow part of the non-party entity known as Galactic Funk Touring, Inc., the party on behalf of whom Mr. Peck signed the contract. Plaintiff's sole basis for this assertion lies in the fact that the Defendants appeared on one album recorded by the band Galactic. Such a leap of logic is difficult to accept, especially when it comes from individuals who work in the music industry.

Plaintiff next argues that the forum selection clause is binding on the Defendants "because of their close relationship to the contract." Response at p. 11. Plaintiff goes on to clarify that a "closely related" non-party is one where its interests are "completely derivative." *Id.* However, the only facts it offers to show the Defendants' "completely derivative" interests simply establish that certain individual Defendants appeared at certain shows which were also addressed in the contract entered into between Plaintiff and a non party to this lawsuit.. These facts are clearly insufficient under the very case law cited in the Plaintiff's reply. In *Weingrad v. Telepathy, Inc.*, 2005 WL 2990645 (S.D.N.Y. Nov. 3, 2005), the court found "completely derivative" interest where the signatory and related third parties were allegedly acting in concert to harm the plaintiff. Unlike *Weingrad*, the Defendants were not acting in concert with Galactic Funk Touring, Inc. The Court need look no further than the fact that Galactic was paid under the contract, while the Defendants were not, to find a lack of "completely derivative" interest.

Finally, Plaintiff argues that the claims and the agreement are so entwined that the forum selection clause becomes applicable. Again, the Plaintiff notes that the third party must be a "beneficiary of a contract." Response at p. 12. To that extent, Plaintiff alleges that the "Defendants acted in concert . . ." *Id.* However, once again Plaintiff fails to offer any facts supporting such a conclusion. Plaintiff cites *Burrows Paper Corp. v. Moore & Assocs.*, 2007 WL 2089682 (N.D.N.Y. July 20, 2007) as evidence that a third-party beneficiary can be bound to a

forum selection clause, but in *Burrows* the third-party beneficiary had explicit, enforceable rights under the contract. *Id.* at *3 ("[I]t would defy logic to allow plaintiff, as a third-party beneficiary, to seek the enforcement of some of the terms of the benchmark agreement, e.g., those related to defendants' obligation to provide accurate price reports, while denying its obligations under others, e.g., the forum-selection clause"). Plaintiff has failed to enumerate any such benefit bestowed upon the Defendants by the referenced third-party contract. Accordingly, the forum selection clause is inapplicable and is not at all binding.

### III. PLAINTIFF'S SUIT SHOULD BE REJECTED AS IMPERMISSIBLE FORUM SHOPPING

This Court would not even be considering this Motion were it not for the Plaintiff's impermissible exercise in forum shopping. Nonetheless, Plaintiff argues in its Response that it is entitled to deference as the first to file. Yet, while the first-to-file rule should not be disregarded lightly, "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Z-Line Designs, Inc. v. Bell'O International LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003), citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 627-28 (9th Cir. 1991). Plaintiff justifies its actions by asserting that "Defendant's [*sic*] communications left NTC exposed to exactly the type of uncertainty and threat of litigation in multiple venues that declaratory judgments are designed to prevent." Response at p. 15. Unfortunately for the Plaintiff, its own pleadings indicate otherwise.

Plaintiff's justification for its race to the courthouse is summarized in one sentence: "Defendants' statement [of possible lawsuits] was sufficient to notify NTC that there was an actual case and controversy between Defendants and itself, but did not contain specific, concrete indications that suit itself was imminent." *Id.* However, this blatantly contradicts Plaintiff's own

complaint, which asserts that "on March 28, 2008, Defendants wrote to Plaintiff through counsel asserting that Defendants would not have knowingly been associated with Plaintiff's business, and that Plaintiff's posting materials relating to Defendants on the ZigZagLive website infringes Defendants' rights under, *inter alia*, 15 U.S.C. § 1125(a)(1)(A), California Civil Code § 3334 and Oregon common law . . ." Complaint at ¶ 40. It further asserted that the Defendants sent Plaintiff a cease-and-desist letter with a compliance deadline of April 4, 2008. *Id.* at ¶ 41. Indeed, that is the very day that Plaintiff rejected Defendants' demands, and a mere two days before Plaintiff filed its own preemptive retaliatory suit. *Id.* at ¶ 42. This is an overt example of impermissible forum shopping. *See Z-Line Designs, Inc.*, 218 F.R.D. at 667 referencing *Recoton Corp. v. Allsop, Inc.* 999 F. Supp. 574, 577 (S.D.N.Y. 1998) (refusing to apply first-to-file rule where two days separated two actions); *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1159 (S.D.N.Y. 1996) (four days); *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992) (20 days).

National Tobacco alleges that its sponsorship agreement with Phoenix Media regarding the Phoenix Best Music Poll 2006 show (the "Phoenix Sponsorship Agreement") gave it some type of express right to use Defendants' publicity rights to market its products. On its face, the Phoenix Sponsorship Agreement relates solely to where National Tobacco's "Zig-Zag Live" mark was to appear in Phoenix Media's advertising. *See* Chane Dec. Ex. A. It does <u>not</u> mention Blackalicious or any other artist, and does not purport to grant <u>any</u> rights to Zig-Zag in relation of the particular artists, including any of the Defendants, performing in the Phoenix Best Music Poll 2006 show.[1] *Id.*

---

[1] Chane Dec. Ex. B shows several performers and several sponsors of the event (including Budweiser). Significantly, the internationally famous reggae artist, and Matisyahu is listed on the exhibit. Matisyahu is not a spokesman for Budweiser or Zig-Zag. Interestingly, despite Matisyahu's inclusion in the show, National Tobacco did not advertise Matisyahu on the Website.

- 7 -

**B.     The New York Suit.**

After their discovery of their purported "sponsorship" by Zig-Zag and the violation of their publicity rights, Defendants sought the advice of counsel. As more fully set forth in Defendants' initial motion, on March 28, 2008 Defendants' counsel sent a letter <u>from California</u> to National Tobacco's headquarters in <u>Kentucky</u>. The letter outlined Defendants' position regarding National Tobacco's false designation of origin under the federal trademark act, misappropriation of Defendants' right to publicity under California common law, and unfair competition per the California Professional Code (the "Cease and Desist Letter"). The letter demanded National Tobacco cease use of Defendants' names and likenesses on the Website, demanded recompense for the use, and stated the offer to settle would remain open until April 4, 2008. After that date, the letter specifically and explicitly noted that Defendants would file suit in California and Oregon.

On April 4, 2008, the day of the deadline and <u>prior to discussing the matter with Plaintiffs' counsel</u>, National Tobacco filed a declaratory relief suit in New York.

Defendants had no opportunity to file an infringement suit in a proper and convenient forum without unfairly violating the deadline they themselves imposed on National Tobacco. As noted in Defendants' initial motion, they filed their own lawsuit, now pending in the Northern District of California on April 11, 2008.

Given the facts before the Court, Plaintiff cannot assert with a straight face that it was without "specific, concrete indications that suit itself was imminent." Indeed, Plaintiff's own complaint acknowledges that "Plaintiff has a reasonable belief and *imminent fear* that Defendants will raise issues relating to alleged trademark infringement . . ." Complaint at ¶ 54 (emphasis added). Plaintiff's decision to file the present retaliatory and preemptive lawsuit on the day of

the Defendants' expressly stated settlement deadline, and before discussing the matter with Defendants' counsel, shows the specific, concrete, imminence of that deadline. This suit is clearly anticipatory forum shopping, and therefore an exception to the "first-to-file rule." As such, its decision to file this suit—premised upon a cease and desist letter sent from *California* to NTC's headquarters in *Kentucky* regarding advertisements on a Website that is located on the *internet*—in the state of New York is improper.

WHEREFORE, Defendants TIMOTHY PARKER and XAVIER MOSLEY, p.k.a. Blackalicious, RAYMOND RILEY p.k.a. Boots Riley, and SOLOMON DAVID and MARLON IRVING, p.k.a. Lifesavas request that this Court enter an Order dismissing Plaintiff's Complaint on the grounds of improper venue and *forum non conveniens*, or in the alternative transfer this motion to the Northern District of California.

Dated: June 26, 2008

s/David B. Sudzus
David B. Sudzus
Drinker Biddle & Reath LLP
191 N. Wacker
Suite 3700
Chicago, IL 60606
(312) 569-1000 (phone)
(312) 569-3000 (fax)
david.sudzus@dbr.com

David B. Sudzus
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 569-1000
Facsimile: (312) 569-3000

CH01/ 25169633.1

## CERTIFICATE OF SERVICE

    The undersigned attorney hereby certifies that on June 26, 2008, I caused a true and correct copy of Defendants' Reply in Support of Motion to Dismiss to be electronically filed with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following to all counsel for Plaintiff and Defendants as listed below:

| | |
|---|---|
| Marcella Ballard<br>Baker & McKenzie LLP<br>1114 Avenue of the Americas<br>New York, NY 10009 | **Attorneys for Plaintiff** |
| Anthony E. McNamer, Esq.<br>McNamer and Company<br>519 SW Third Ave., Suite 601<br>Portland, Oregon 97204 | **Attorneys for Defendant Timothy Parker and Xavier Mosley, p.k.a. Blackalicious, Raymond Riley p.k.a. Boots Riley, Solomon David and Marlon Irving, p.k.a. Lifesavas** |

Dated: June 26, 2008

                                                               s/David B. Sudzus
                                                                David B. Sudzus
                                                               Drinker Biddle & Reath LLP
                                                               191 N. Wacker Drive, Suite 3700
                                                               Chicago, Illinois 60606
                                                               Telephone: (312) 569-1000
                                                               Facsimile: (312) 569-3000